MRS. LOIS MANSFIELD WARREN

*v.*

WILLIAM G. CROCKETT.

CHARLES EDWARD WARREN

*v.*

WILLIAM G. CROCKETT.

364 S.W.2d 352.

(*Jackson,* April Term, 1962.)

Opinion filed December 7, 1962.

Rehearing Denied February 7, 1963.

174

Moss & Benton, Jackson, for petitioners.

Waldrop & Hall, Hewitt P. Tomlin, Jr., Jackson, for respondent.

MR. JUSTICE FELTS delivered the opinion of the Court.

In these cases there were verdicts and judgments for plaintiffs against defendant in the Circuit Court. The Court of Appeals reversed and entered judgments dismissing the actions as on directed verdicts. We granted plaintiffs' petition for certiorari and the cases have been heard here.

These actions grew out of an automobile accident on a street in the city of Jackson. Mrs. Warren was on the front seat with her husband in his car, driven by him. He had stopped behind traffic that had stopped to permit a left turn; and while his car was standing still, defendant, in his car, overtook, ran into and struck the rear of the Warren car, knocking it against the car in front of it, throwing Mrs. Warren forward against the dashboard. She sued for damages for her personal injuries; and her husband, for expenses, loss of services, etc.

There have been two trials in these cases. On the first trial, at the close of the evidence for plaintiffs, the Trial Judge directed verdicts for defendant upon his pleas of accord and satisfaction. Upon plaintiffs' motions for a new trial, the Judge concluded he had erred, set aside his former action, and granted plaintiffs a new trial. Defendant saved a wayside bill of exceptions.

On the second trial, there was a verdict and judgment for each plaintiff for $2,500.00. Defendant appealed in error to the Court of Appeals, and there assigned errors upon both trials, assigning for error upon the wayside bill of exceptions the Trial Judge's action in setting aside the judgments of dismissal and granting plaintiffs a new trial, and assigning errors on the bill of exceptions upon matters occurring on the second trial.

Considering first the error assigned upon the wayside bill of exceptions, the Court of Appeals held that the Trial Judge had properly directed verdicts for defendant upon his pleas of accord and satisfaction, and had erred in granting plaintiffs a new trial; and that Court reversed the latter action of the Trial Judge and entered judgments dismissing plaintiffs' actions. Such being its view of the case, the Court did not reach or consider the errors assigned on the second trial.

■ Plaintiff Warren had tendered to defendant the sum he paid for the release; and the issue made by his pleas of accord and satisfaction, plaintiffs' replications, and defendant's rejoinders, was whether the release had been signed under a mutual mistake of fact as to the nature and extent of Mrs. Warren's injuries, and should be rescinded upon that ground.

Plaintiffs-petitioners contend that the Court of Appeals erred in holding that verdicts should be directed for defendant on his pleas of accord and satisfaction, at the close of the evidence for plaintiffs on the first trial; that such evidence showed that the release was executed under a mutual mistake of fact as to the nature and extent of Mrs. Warren's injuries, or at least it made this issue a question for the jury.

We think this contention must be sustained. Such evidence showed that the accident happened in front of the Jackson Clinic, and Mrs. Warren had been a patient of one of the doctors there, Dr. Myhr; so she was taken into the Clinic and examined by Dr. Frank Moore. She was bruised and her neck was hurting, but did not suppose she had suffered any serious injury. Dr. Moore did not

X-ray her neck, and his examination revealed no evidence of any fracture or serious injury.

Some three weeks after the accident, and before Mrs. Warren's injuries had become apparent or were known to either party, defendant's insurer's adjustor agreed with Mr. Warren on a settlement. He did not talk to Mrs. Warren. He gave Warren a draft, payable to Warren, Mrs. Warren, and the Truex Chevrolet Co., the concern which had repaired Warren's car, and took a general release from the Warrens' releasing defendant from 'all known, unknown, foreseen, and unforeseen, bodily and personal injuries'' and property damage caused by the accident.

The evidence shows, however, that nothing was paid to Mrs. Warren on account of any personal injuries to her. This draft was for $326.50, being the exact amount of the bill for repairing Warren's car ($318.50), plus $5.00 for his loss of its use, plus $3.00 for Dr. Moore's examination of her, which was his obligation rather than hers. So, virtually the whole consideration that passed to him was for his property damage; and no consideration actually passed to her for release of her personal injuries.

It appears that the learned Court of Appeals reached its conclusion upon the basis of a statement made by Warren in his testimony, which it took as establishing that ''Dr. Moore told her, at that time, that she had a whiplash injury which might cause future trouble'' (op. p. 1); and the Court regarded this as negativing any mutual mistake of fact, and as showing that, in making the release, the parties entered into a speculative agreement, taking the risk or chance of such future trouble as might happen.

■ We think the statement referred to does not go that far. It must, of course, be considered under the rule that, on defendant's motion for a directed verdict, the Court must look to all the evidence, construe it most strongly in favor of plaintiff, and take as true that which tends to support his right, discard all countervailing evidence, and allow all reasonable inferences in his favor. *City of Winchester v. Finchum,* 201 Tenn. 604, 607, 301 S.W.2d 341, and cases there cited.

The statement above referred to was made by Warren in connection with his testimony that at the time of the signing of the release, he did not know Mrs. Warren had any injury and knew only what she had told him Dr. Moore had told her. Asked what that was, he answered: "A. She told me what he said, that she had a *possible* whiplash injury and it *might* give her trouble in the future" (italics ours). This did not say that "she *had*" such an injury, but only that it might be *possible*.

This statement must be construed most favorably to plaintiffs and must, of course, be taken with all the other evidence, in considering whether verdicts should be directed for defendant. Mrs. Warren did not make any similar statement, but testified that at the time of signing the release, she was not having any trouble, did not know she had any injury, and that it was not until months later that she learned of her injury when it became so painful that she had to be hospitalized. She then learned that she had been injured in her neck or cervical region. We quote from her cross examination:

"Q. 98. Well, you intended to release them, didn't you?

"A. Not from injury, no.

"Q. You never did have any intention of doing that?

"A. Well, not from—until the injury came up, at that time—

"Q. 100. At that time you didn't—er—

"A. *I didn't know that I had one,* no.

"Q. 101. How is that?

"A. I didn't know I had one, no." (Italics ours.)

In considering whether verdicts should be directed upon this release, her testimony, above quoted, must be taken as true. It must be taken as a fact that when she and her husband received the draft, covering merely the amount of his property damage, and signed the release, she did not intend it to cover or release any personal injury, because she did not then know she had any such injury.

So, upon the evidence viewed most favorably to plaintiff, we think the jury might reasonably have found that both parties were laboring under the mistake that Mrs. Warren had suffered no personal injury, and that the printed release of all claims and causes of action for "all known and unknown, foreseen, and unforeseen, bodily and personal injuries" was executed under a mutual mistake of fact as to the existence, nature and extent of Mrs. Warren's personal injuries.

■ It is well settled that equity will rescind a contract executed under a mutual mistake of a material fact; and that under 1932 Code sec. 10329, now T.C.A. 16-511, the Circuit Court has jurisdiction to grant this equitable

remedy of rescission in an action at law, in the absence of a demurrer challenging such jurisdiction. *Metropolitan Life Ins. Co. v. Humphrey,* 167 Tenn. 421, 424, 70 S.W.2d 361; *Stewart v. Craig,* 208 Tenn. 212, 220-221, 344 S.W.2d 761.

In *Metropolitan Life Ins. Co. v. Humphrey,* supra, it was said: "Mutual mistake as to the nature or extent of injuries is considered good cause for avoidance of a settlement, but the mistake must relate to a past or present fact, not an opinion as to the result of the known fact. * * *"

The facts in the cases before us are quite similar to those in the case of *Lewis of Deleware, Inc., et al. v. Dr. John D. Young,* 5 C.C.H. Automobile Cases 2nd 728, not officially reported. There, Dr. Young was in an automobile collision. The adjustor of defendant's insurer paid Dr. Young $453.93, the total amount of his property damage (damages to his car, a tire, and for loss of its use); and he signed a general release of all claims for "known and unknown, foreseen and unforeseen" personal injuries and property damages resulting from the accident.

At the time of signing the release, Dr. Young did not know he had any personal injuries or anything more than just a few bruises and a minor shake-up, which he did not think amounted to anything at all. Later, he began to feel pain, and it developed that he had suffered serious injury in his neck and cervical area. It was held that the parties had signed the release under a mutual mistake of fact as to the existence of his injuries and he was granted a recission so that he might sue for damages for such injuries.

In this case, this Court, in an opinion by Mr. Justice Burnett, discussed the authorities here and elsewhere, and quoted from the Annotation in 48 A.L.R. 1467, the following as stating the correct rule:

"The rule is well settled, according to the great weight of authority, that a general release of a claim for personal injuries may, under proper circumstances, be avoided on the ground of mutual mistake as to the nature or seriousness of the injury. * * *"

"Where one has sustained personal injuries, and with his attention directed to the known injuries, which are trivial in their nature, contracts for the settlement of his damages with reference thereto, in ignorance of other and more serious injuries, both parties at the time believing that the known injuries are all the injuries sustained, then there is a mutual mistake, and the release, although couched in general terms, should be held not to be a bar to an action for the more serious and unknown injuries."

We think the facts and circumstances of these cases bring them within the decision in the Young case, and that the evidence for plaintiffs on the first trial made it a question for the jury whether the release had been executed under a mutual mistake of material fact; and that the Court of Appeals erred in reversing the Trial Court and in dismissing these actions as on directed verdicts.

Since the Court of Appeals did not reach or consider the matters assigned for error upon the second trial, such matters are not before us for review. A judgment will, therefore, be entered here reversing the judgments of the Court of Appeals and remanding the cases

to that Court for consideration of the errors assigned on the second trial. *Meacham v. Woods,* 205 Tenn. 18, 27-28, 325 S.W.2d 281; *Dykes v. Meighan Const. Co.,* 205 Tenn. 175, 188, 326 S.W.2d 135. The costs incident to the petition for certiorari are adjudged against defendant, the other costs to abide the outcome.

### On Petition to Rehear

Defendant below Crockett has filed a petition to rehear and an able argument. It points out, however, no matter of fact or law overlooked, but only re-argues matters which were fully presented and considered, and which learned counsel insist were improperly decided after full consideration. Such a petition presents no ground for a rehearing. *City of Paris v. Paris-Henry County Public Utility District,* 207 Tenn. 388, 398, 340 S.W. 2d 885, 890; *Logan v. Reaves,* 209 Tenn. 631, 638, 354 S.W.2d 789, and cases there cited.

The petition is denied at Petitioner's cost.