801 F.2d 217
 David HILL, Connie Hill, Wayne Hill, Agnes Hill, Leonard
Hill and Hazel Hill, Plaintiffs-Appellants,
v.
A.O. SMITH CORPORATION, A.O. Smith Harvestore Products,
Inc., and Agristor Credit Corporation, Defendants-Appellees,
and
Agristor Credit Corporation, Counter-Plaintiff.
 No. 85-5902.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 8, 1986.
Decided Sept. 15, 1986.
 
 John K. Maddin, Jr., Gracey, Maddin, Cowan and Bird, Nashville, Tenn., Malcolm L. McCune, Wade Cowan (argued), for plaintiffs-appellants.
 John E. Brandon, Watkins, McGugin, McNeily & Rowan, Nashville, Tenn., William D. Leader, Jr., for A.O. Smith.
 Arnold A. Stulce, Jr. (argued), Joe E. Manuel (argued), Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, Tenn., for defendants-appellees.
 Before MARTIN and JONES, Circuit Judges, and COHN, District Court Judge*.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs appeal from a summary judgment dismissing the three defendants from this diversity action seeking damages and injunctive relief for an alleged defect in certain farm structures purchased from the defendants. The district court dismissed the defendants because of various general releases signed by the plaintiffs waiving all rights to future claims arising from the purchase of the structures. Three issues are raised on appeal: 1) whether there was a jury issue on fraudulent inducement or mutual mistake of fact to void the releases; 2) whether the plaintiffs' conspiracy to defraud claim is barred by Tennessee's three year statute of limitation; and 3) whether the district court erred in granting summary judgment awarding Agristor a deficiency for breach of contract. We reverse the judgment dismissing A.O. Smith Corporation and A.O. Smith Harvestore Products, affirm the judgment dismissing Agristor, and affirm the judgment awarding Agristor a deficiency.
 
 
 2
 The Hills (David, Connie, Wayne, Agnes, Leonard and Hazel) are partners operating a dairy farm in Lincoln County, Tennessee. Defendant A.O. Smith Corporation ("A.O. Smith") is a New York based corporation engaged in various ventures and is the original designer of the farm structures and equipment that are the subject of this suit. Defendant A.O. Smith Harvestore Products, Inc., ("Harvestore Products") manufactures and distributes agricultural equipment and is a wholly owned subsidiary of A.O. Smith. Defendant Agristor Credit Corporation ("Agristor") finances equipment purchased by individual farmers. Agristor was created by Harvestore to serve as its financing arm and, it too, is a wholly owned subsidiary of A.O. Smith.
 
 
 3
 On May 13, 1975, the Hills entered into a retail installment contract and security agreement with the defendants' local dealer, K-T Harvestore Systems, Inc., to purchase a glass coated steel silo feed storage structure called a "Harvestore" and other agricultural equipment. The Hills entered into similar agreements on July 7, 1976 to purchase two more Harvestore structures and additional agricultural equipment. The retail installment contracts for all three purchases were subsequently assigned to Agristor.
 
 
 4
 Some time later the Hills experienced a problem with one of the Harvestore structures. The concrete foundation was apparently shrinking away from the sides of the metal structure. The Hills informed the local dealer, K-T Harvestore, about the problem. K-T Harvestore responded by pumping sealant into the gap in an attempt to fix the problem. After the sealant was injected, however, the bolts connecting the glass coated steel base of the structure to the concrete foundation began to break off. K-T Harvestore proposed that the seam be welded but the Hills were not satisfied with that proposal. In order to resolve the problem, an agreement was reached where the Hills accepted a new unloader and other equipment. In return, the Hills agreed to sign a "Release" expressly discharging and releasing, inter alia, A.O. Smith, Harvestore Products, Inc., and other corporations connected with financing the Harvestore structures from any future claims of liability. The Release was signed on July 12, 1978 and reads in pertinent part as follows:
 
 
 5
 For and in consideration of the covenant of Harvestore herein, the Hills by these presents for themselves, their executors, administrators, successors and assigns, do hereby remise, release, exonerate and forever discharge A.O. SMITH CORPORATION, A CORPORATION, A.O. SMITH HARVESTORE PRODUCTS, INC., a corporation, and any executive officer, employee, director, and all independent dealers (including K-T Harvestore Systems, Volunteer Harvestore Systems, Inc. and Hedlund Manufacturing Company Inc.) and salesmen of said corporations, and any and all other corporations, firms, associations, or persons, including but not limited to insurers who are or who may ever become liable to the undersigned, of and from any and all claims, demands, causes of action, damages, costs, expenses, attorneys' fees and obligations of any nature whatsoever, known or unknown, in law or in equity, which they ever had, now have, or may hereafter have, arising out of or in any way connected with representations (whether oral or written), use, marketing, advertising, sale, design, manufacture, assembly, inspections, supply, modification or financing of structures called Harvestore structures, Harvestore unloaders, Slurrystore structures, accessories, and equipment appurtenant thereto, including (but not limited to) buildings, concrete, feed bunks, wiring, plumbing and freight and installation charges thereon.
 
 
 6
 The undersigned agree as FURTHER CONSIDERATION and inducement for this compromise settlement that they and each of them waive the benefit of any statutory restrictions of general releases and with knowledge thereof agree that this release shall apply to all unknown and unanticipated losses or damages which may hereafter be claimed by the undersigned as well as those known by the undersigned.
 
 
 7
 (Emphasis added).
 
 
 8
 The Hills were delinquent in some of their scheduled payments to Agristor on a number of occasions over the next three years and entered into a total of nine separate extension agreements on February 12, 1981, July 30, 1981 and November 12, 1981 to refinance the loans. In consideration of the extensions, the Hills signed a Release with Agristor waiving "all claims arising out of the purchase of said property and all defenses ... to the payment ... on said Contract ..."
 
 
 9
 The Hills claim that during the time the Harvestore structures were in use they experienced a loss of milk production and their dairy herd experienced a lack of appetite and an increased incidence of death and disease. They further claim that they were unaware of the source of the problem until 1983 when they became aware of other Harvestore owners who were experiencing similar problems. The Hills alleged that the Harvestore structures somehow damaged the feed stored in them and their dairy herd suffered from eating this bad feed. Specifically, they alleged that the design of the structure permitted oxygen to enter into the structure, spoiling the feed.
 
 
 10
 The Hills filed a diversity action in the district court seeking damages and injunctive relief under theories of fraud, negligent and fraudulent misrepresentation, strict liability, breach of expressed and implied warranty and for violation of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. Sec. 47-18-101, et seq. (1984). Agristor filed a counter-complaint against the Hills seeking a deficiency for payment on the installment contract.
 
 
 11
 Harvestore Products filed a motion for summary judgment for dismissal on the basis that the signed Release precluded any claims for liability. The district court granted the motion finding that the release operated as a valid accord and satisfaction, and sua sponte dismissed A.O. Smith on the ground that it too was covered by the release. Agristor filed a motion for summary judgment for dismissal on the basis of the 1978 Release, the waivers in the extension of payment agreements and a waiver in a consent to assignment clause in the original installment contracts. Agristor also filed a motion for summary judgment to dismiss a claim for civil conspiracy as barred by the statute of limitations. The district court refused to decide whether the consent to assignment clause was grounds for dismissal of Agristor, but found that the Hills had waived their right to assert any claims against any of the defendants because of the original Release and the waiver in the extension agreement. The district court also dismissed the civil conspiracy claim as time barred by the three year limitations period in Tenn. Code Ann. Sec. 28-3-105 (1980). As to Agristor's counter-complaint seeking damages for the deficiency, the Hills never responded to the summary judgment motion. The district court ruled that the Hills were liable to Agristor in the amount of $63,870.66 plus attorney's fees, costs and expenses of $6,020.63. The Hills have appealed from these summary judgments.
 
 I.
 
 12
 The Hills contend that the district court erred in granting summary judgment dismissing defendants A.O. Smith and Harvestore Products, arguing that the Release did not operate as a valid accord and satisfaction because it was not intended to apply to the claims alleged in the complaint. Rather, they argue, the Release was only intended to release the defendants from claims arising from the dispute over the foundation problem in one Harvestore structure; the problem arising from the alleged defect in the feed storage structures causing spoiled feed was not contemplated or intended to be covered by the Release.
 
 
 13
 On its face, the Release is clear. Both A.O. Smith and Harvestore Products are expressly named as entities who were released from "any and all claims ... known and unknown ... which they [plaintiffs] have ever had, now have, or may hereafter have arising out of or in any way connected with representations ..., use, marketing, advertising, sale, design, manufacture ... of structures called Harvestore structures." Thus, the Release does appear to encompass all claims arising from defects in the Harvestore structures, including those alleged to exist by the Hills.
 
 
 14
 This is a diversity action and, accordingly, the substantive law of Tennessee is controlling. Under the law of Tennessee, generally, a clear and unambiguous contract must be interpreted as written. Sutton v. First National Bank, 620 S.W.2d 526, 530 (Tenn.App.1981). Also, the scope and extent of a release depends on the intent of the party as expressed in the terms of the agreement. Evans v. Tillett Brothers Construction Co., 545 S.W.2d 8, 11 (Tenn.App.1976). However, any release procured by false or fraudulent representations is voidable, id., as is a release that was negotiated based on a mutual mistake of a material fact. Warren v. Crockett, 364 S.W.2d 352, 355 (Tenn.1962).
 
 A.
 
 15
 The Hills argue first that the statements in an affidavit of plaintiff David Hill relating certain representations made by a representative of A.O. Smith prior to the signing of the Release creates a genuine issue of material fact that the defendants obtained the Release by fraudulent representations. In his affidavit, David Hill stated that he was informed by Richard Lee Jones, an employee of Harvestore Products, that the Release was only meant to release the local dealer, K-T Harvestore, from liability and Harvestore Products would "continue to stand behind its product." He further stated that none of the defendants' representatives ever informed him that the Harvestore system had design problems that could cause feed spoilage.
 
 
 16
 The problem with the Hills' fraud claim is one of proof. At least with respect to the fraud claim, the Hills cannot be permitted to rely on these bald assertions as creating a triable issue when the Release expressly precludes any claims against these defendants. The Hills are presumed to have read and understood the agreement. Dixon v. Manier, 545 S.W.2d 948, 949 (Tenn.App.1976). There is no proof in the record other than David Hill's bald assertions supporting the Hills' argument that they were fraudulently induced into signing the Release. Moreover, there is no evidence whatsoever that the defendants knew that the Harvestore structures were defective in the manner alleged. The district court properly concluded that there was not a factual issue for the jury on the claim of fraudulent inducement.
 
 B.
 
 17
 Alternatively, the Hills contend that the Release should be voided because it was based on a mutual mistake of fact. The alleged mutual mistake is that the parties did not intend that the Release apply to any claims arising from the storage problem, but that it was intended to apply only to problems arising from the foundation problem. Mutual mistake as to the nature or extent of injuries is cause for avoidance, but the mistake must relate to a past or present fact. Warren, 364 S.W.2d at 355. A plaintiff can not rely on mutual mistake to void a release when he had knowledge of the facts which merely turn out differently than was expected. Wilson v. Scott, 672 S.W.2d 782, 786 (Tenn.App.1984). Whether a mutual mistake exists is normally a factual question for the jury. Evans, 545 S.W.2d at 11. These basic principles of Tennessee law must, therefore, form the basis for determining whether the factual situation in this case creates a triable issue for the jury.
 
 
 18
 In order to resolve this issue, we rely on Warren, supra. The plaintiff in that case was injured in an automobile accident. The defendant paid to have the plaintiff's car repaired and in consideration obtained a general release from the plaintiff releasing him from "all known, unknown, foreseen, and unforeseen, bodily and personal injuries and property damage caused by the accident." 364 S.W.2d at 353. Before the release was signed, a doctor's examination did not reveal any substantial physical injuries. Some time later, the plaintiff's injuries became more apparent and she brought an action for damages. The court found that the parties were operating under a mutual mistake of fact and did not intend for the release to cover the plaintiff's personal injuries because they were unaware that she suffered from any serious personal injuries at the time the release was signed. The court reached this conclusion despite the doctor's statement at the time of plaintiff's first examination that "a whiplash injury [received during the accident] might cause future trouble." Id. at 354. The court also noted that the settlement figure only included payment for damage to the car and not for personal injuries. The court held, therefore, that the lower court erred in directing a verdict for the defendant.
 
 
 19
 We must also note a seemingly contrary opinion in Collier v. Walls, 51 Tenn.App. 467, 369 S.W.2d 747 (1962). In Collier, the plaintiff was also injured in an automobile accident. She testified at the trial that she experienced pain in her neck and cervical section for about a week after the accident. She later signed a general release discharging the defendant from all future claims of liability in exchange for a settlement in a specified sum for personal and property damage. The court rejected the plaintiff's claim of mutual mistake finding that a week of pain should have placed her on notice that a serious back problem could develop. There was no mutual mistake of fact, the court concluded, the plaintiff merely misjudged the extent of her future injuries.
 
 
 20
 Although Warren and Collier reached different results, the opinions are reconcilable. In Warren, there was no indication that the plaintiff suffered pain for any substantial period of time. To the contrary, in Collier, the court placed considerable emphasis on the length of time that the plaintiff experienced pain before entering into the agreement. Consistent in both cases is the recognition that the mistake must relate to a past or present fact, not an opinion as to the result of a known fact. 369 S.W.2d at 750; 364 S.W.2d at 355. The court in Warren apparently believed that there was a mistake of past fact regarding whether the parties reasonably believed she was seriously injured. The court in Collier believed that the week-long pain suffered by the plaintiff placed her on notice that she suffered from a potentially serious back injury. Thus, the plaintiff in Collier made an erroneous opinion as to the result of a known fact.
 
 
 21
 The facts of this case appear to be even stronger than those in Warren and Collier to support a finding that a mutual mistake of fact existed. At the time the foundation problem with the Harvestore structures occurred there was no reason for the parties to contemplate problems arising from the design of the structures concerning the storage of feed. Had any problems, unanticipated or not, occurred with respect to the foundation, the Hills would clearly have been foreclosed from pursuing those claims. However, there may have been a mistake of past fact in this case as to the existence of a second unrelated injury.
 
 
 22
 Unlike the district court, we do not see a clear-cut factual issue. David Hill stated in the affidavit that neither party intended nor contemplated that the Release would cover anything other than potential liability arising from the problem with the foundation of one Harvestore structure. It is a reasonable view that the Hills were only thinking about their storage structures collapsing when they signed the release. Under the worst possible scenario, the structures would have fallen completely apart and the Hills would have to replace them at their own expense. There is no proof that any party knew of the alleged defects in the storage structures aside from the foundation problem. A jury could have found that these dairy farmers did not intend additionally to waive their rights to claims on account of a defective structure that allegedly caused production problems and devastating and debilitating injury to their dairy herd in exchange for some agricultural equipment; a jury could also have found that the defendants never intended to include such claims in the Release. We believe, therefore, that a jury could reasonably have found that the alleged claims were not intended to have been covered within the terms of the Release.
 
 
 23
 The defendants also argue that David Hill's affidavit is not admissible because it violates the parole evidence rule. Normally, parole evidence is not admissible to contradict or vary the terms of a written agreement. Dunn v. United Sierra Corp., 612 S.W.2d 470, 474 (Tenn.App.1980). Parole evidence is admissible, however, to show that there was fraudulent inducement in entering into an agreement, Torbett v. Jones, 19 Tenn.App. 307, 86 S.W.2d 898, 901 (1935), and in some cases to show the actual intention of the parties when entering an agreement. See, e.g., Little Darlin' Corp. v. Shelby Singleton Production, Inc., 60 Tenn.App. 530, 448 S.W.2d 447, 453 (1969). Since these are the claims raised by the Hills, the admission of the affidavit in this case does not violate the parole evidence rule.
 
 II.
 
 24
 Since we have concluded that the district court erred in granting summary judgment in favor of defendants A.O. Smith and Harvestore Products on the basis of the July 12, 1978 Release, Agristor can not rely on that Release as grounds for its dismissal at the summary judgment stage. However, the district court found alternatively that the Hills had also waived any rights to assert claims against Agristor because of the signed extension agreements. Each of these Harvestore structures was specifically referred to in at least one of nine extension agreements signed in 1981. In each agreement, a release was incorporated where the Hills agreed to waive "all claims arising from the purchase of the product(s)" in consideration of Agristor's refinancing the loans.
 
 
 25
 The language in those agreements is clear. The Hills can not claim mutual mistake because there were no circumstances surrounding the negotiations concerning the extension agreements that could lead to a conclusion that the parties had intended that the release not cover "all" claims. There was, therefore, no triable factual issue for the jury regarding the releases in the extension agreement and the district court properly dismissed the claims against Agristor.[1]
 
 III.
 
 26
 Agristor filed a motion to dismiss the Hills' claim that the defendants engaged in a civil conspiracy to defraud as barred by the three-year limitation's period in Tenn. Code Ann. Sec. 28-3-105.[2] The district court ruled that the time period began to run on the date of the last overt act, which was the date the July 7, 1976 retail installment agreement was signed. Because the action was not filed until 1984, the district court ruled that it was time-barred.
 
 
 27
 The Hills contend that the district court erred in ruling that the cause of action began to accrue on the date of the last overt act of the conspiracy. They argue, instead, that the action should have begun to accrue when the alleged conspiracy was first discovered in 1983. The Hills recognize, of course, that the Tennessee cases applying the three year statute of limitations period to conspiracy claims have held that the cause of action begins to accrue at the date of the last overt act. See Budget Rent-A-Car, Inc. v. Car Services, Inc., 225 Tenn. 342, 469 S.W.2d 360, 362 (1971); Emerson v. Machamer, 221 Tenn. 739, 431 S.W.2d 283, 286 (1968). They argue nonetheless that the Tennessee Supreme Court's adoption of the date of discovery rule in McCroskey v. Bryant Air Conditioning Co., 524 S.W.2d 487 (1975), renders the last overt act rule obsolete. The date of discovery rule states that in tort actions "the cause of action accrues and the statute of limitation commences to run when the injury occurs or is discovered." 524 S.W.2d at 491; Prescott v. Adams, 627 S.W.2d 134, 138 (Tenn.App.1981) (applying date of discovery rule in suit governed by Tenn. Code Ann. Sec. 28-3-105). McCroskey also expressly declared that "all cases contra are overruled." 524 S.W.2d at 491.
 
 
 28
 Since the Tennessee courts have not had the opportunity to address the issue of whether the date of discovery rule applies in a claim for civil conspiracy, we agree with the Hills that it must be determined whether the rule's adoption in McCroskey effectively overrules cases applying the last overt act rule. This circuit has once determined the reach of McCroskey in Murphree v. Raybestos-Manhattan, Inc., 696 F.2d 459 (6th Cir.1982). In that case, the court ruled that McCroskey's date of discovery rule applied in a product's liability action involving a death caused by an asbestos-related disease. The district court had ruled that Tennessee's vested rights doctrine barred the claim. This court reasoned that although McCroskey did not expressly overrule that doctrine, it was clear that the Tennessee courts would overrule it when the occasion arose.
 
 As stated by the court in Murphree:
 
 29
 The McCroskey opinion announces very clearly that judicial policy in Tennessee does not favor doctrines that activate statutes of limitations before the plaintiff had knowledge of the injury.
 
 
 30
 696 F.2d at 461. If the date of the last overt act were used to determine when the cause of action accrued in this case, it would be contrary to the clear judicial policy recognized by this court when construing McCroskey. The Hills allege that they did not discover the source of the problem that formed the crux of their civil conspiracy claim until 1983. Whether the Hills should have discovered the problem earlier is not a question the trial judge or this court can answer; it is a question for the jury. Prescott, 627 S.W.2d at 138. Thus, the district court erred in granting summary judgment on the civil conspiracy to defraud claim on the ground that it was barred by the statute of limitations.
 
 IV.
 
 31
 On this last assignment of error, the Hills challenge the district court's summary judgment that awarded Agristor a deficiency and other costs for breach of the retail installment agreement. There is no dispute that the Hills defaulted on their payments under the agreement. The Hills' only argument is that the district court did not set forth the defenses of fraud and misrepresentation as contested issues of law in its Pretrial Order. The district court denied the Hills' motion to amend the order to include other issues of fact and law as defenses. While it may have been improper for the district court to deny the motion to amend, the Hills never responded to Agristor's motion for summary judgment. Thus, there appears to have been no reason for the district court not to grant the motion.
 
 
 32
 We therefore AFFIRM the district court summary judgment dismissing the case against Agristor, AFFIRM the summary judgment awarding the deficiency against the Hills and REVERSE and REMAND with instructions to reinstate A.O. Smith and Harvestore Products as defendants.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Agristor also contends that a "consent to assignment" clause in the original retail installment agreement precluded any claims against them. The district court declined to rule on this issue in light of its ruling that the July 12 Release and the extension agreements served to insulate Agristor from any claims. Because it appears that the district court was correct regarding the effect of the extension agreements, there is no need to consider the effect of the consent to assignment clause
 
 
 [2]
 We recognize that our opinion effectively dismisses all claims against Agristor. However, this issue may still be relevant as to the remaining defendants on remand