**Helen CHARASH, Plaintiff–Appellant,**

v.

**OBERLIN COLLEGE, Defendant–Appellee.**

No. 92–3952.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1993.

Decided Jan. 20, 1994.

E. John Bryztwa, Cavitch, Familo & Durkin, Cleveland, OH, Marc S. Moller (briefed), David L. Fiol (argued), Kreindler & Kreindler, New York City, for plaintiff-appellant.

John L. Keyse–Walker (argued and briefed), Kurt D. Anderson, Fauver, Tattersall & Gallagher, Elyria, OH, for defendant-appellee.

Before: JONES and SILER, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This case requires us to apply Ohio's choice of law rules in a diversity action by a New Jersey resident against an Ohio not-for-profit corporation. Because the plaintiff charges the defendant with converting property included in the estate of a New York resident at the time of her death, and allegedly misappropriated by a New York resident before delivery to the defendant, the plaintiff contends that the substantive law of New York controls the issues raised by her complaint. Applying an Ohio statute of limitations, the district court found the action

time-barred and granted the defendant's motion for summary judgment.

On appeal, as in the district court, the plaintiff argues that under New York law her cause of action did not accrue until she discovered the misappropriation and the wrongful detention of the property by the defendant and made a demand on the defendant for return of the property, which was refused. If this method of determining the accrual date were applied the complaint would be timely under both New York and Ohio applicable statutes of limitations. For the reasons that follow we conclude that the district court correctly determined that the substantive law of Ohio governs the issues raised by the complaint and properly applied the Ohio statute of limitations. Nevertheless, we believe summary judgment was improper because a genuine issue of material fact exists as to the accrual date of the cause of action. Thus, we vacate the judgment and remand for further proceedings.

## I.

The case concerns works of art created by Eva Hesse, who was little known at the time of her death in 1970, but whose reputation as an artist of merit has grown significantly in recent years.

## A.

The plaintiff, Helen Charash, sister of Eva Hesse, is the only surviving relative and her sole heir at law. (Ms. Hesse was separated from her husband and he has waived all claims to her estate, including works of art). Ms. Charash was appointed administratrix of the Hesse estate by the New York County Surrogate. She brought this suit in the United States District Court for the Northern District of Ohio in her individual capacity more than twenty years after her sister's death.

The complaint charges the defendant Oberlin College with converting approximately 44 drawings by Eva Hesse that allegedly were "misappropriated" by Donald Droll, a New York art dealer and advisor to both Ms. Hesse and Ms. Charash. According to the complaint, Donald Droll, who has since died, gave the drawings to his brother, Philip Droll, who, in turn, donated them to Oberlin. According to the complaint, Oberlin never advised the plaintiff of the gift from Philip Droll through Donald Droll, although the plaintiff was in frequent contact with Oberlin representatives and, in fact, had herself given many Hesse art works to the college.

Finally, the complaint states that the plaintiff advised Oberlin that neither of the Droll brothers was authorized to transfer possession of the drawings to the college. Although Ms. Charash demanded that Oberlin return the drawings, the college refused to do so, and this action followed.

## B.

The parties engaged in extensive discovery. In her deposition Ms. Charash stated that she inventoried Ms. Hesse's possessions shortly after her death, but because there was so much she did not catalogue all of the art works. Ms. Hesse lived in a New York artist's loft and it was necessary to remove her property sometime after her death. Ms. Charash stated that she saw a trunk in her sister's living quarters and that it was filled with drawings. She did not make an inventory of the contents of the trunk, though she testified that the drawings were of the "type" or "genre" of those given to Oberlin by the Drolls. The trunk disappeared according to Ms. Charash, either from her sister's loft or from the warehouse to which the Hesse property was removed, and she forgot about it and the drawings in it for several years. She stated that the trunk "resurfaced" at a gallery where Donald Droll worked, and that together she and Droll emptied it and put the contents in gallery drawers.

Ms. Charash testified that she did not learn that Oberlin had the drawings until 1988, when a friend who was writing a book about Eva Hesse visited Oberlin and reported to her that the college had on display a much larger collection of Hesse drawings than he had expected to find. She then traveled to Oberlin with her current advisor, Barry Rosen, and was shocked to learn for the first time that Donald Droll had given Oberlin, either directly or through his broth-

er, 95 or 100 Hesse drawings. According to Ms. Charash, she never knew Droll had such a large number of her sister's drawings, and he was never authorized to make the gifts.

Ms. Charash also testified that she was certain her sister had not given the drawings to Droll, that it was contrary to her usual practice. She filed affidavits from friends and acquaintances of Hesse's to the same effect. Ms. Charash stated in answer to an interrogatory that all the art works of Eva Hesse were the sole property of the artist or herself.

### C.

In cross-examining Ms. Charash, Oberlin attempted to establish that she had both actual and constructive notice that the drawings were in Oberlin's possession many years before filing this action in 1991. At the deposition Oberlin's counsel produced the catalogue for a "retrospective" on the work of Eva Hesse, issued in 1981 or 1982, when Oberlin arranged that show. Ms. Charash testified that both she and Donald Droll worked with Oberlin in arranging the show. She acknowledged receiving copies of the catalogue and stated that she believed she read it. The foreword to the catalogue stated that Oberlin received "major portions of her [Hesse's] artistic estate as very generous gifts from her sister, Helen Charash, and her friend and dealer, Donald Droll." Ms. Charash testified that she did not grasp the significance of "gifts" as connected to Droll, because she had made major gifts of Hesse art to Oberlin and Droll had been involved in the transfers.

When asked about a 1982 bulletin from the Oberlin art museum that referred to 44 Hesse drawings, "gift of Philip Droll through Donald Droll," Ms. Charash said she had never seen the bulletin before it was filed as an exhibit. She said she received "a lot of stuff" from the museum. If she had seen this listing of 44 prints from Donald Droll, she would have done something about it. She also denied ever seeing a letter from Barry Rosen to Oberlin in 1984 requesting a list of all gifts to the museum from Donald or Philip Droll. Rosen testified that the letter was written in connection with his efforts to learn of Donald Droll's activities; that it was not written in behalf of Ms. Charash. He stated that he did not read the lists sent him by Oberlin in July 1984, that he did not put the lists in the Hesse file, and that he never discussed them with Ms. Charash.

The plaintiff acknowledged writing to Donald Droll in 1984 about "recent misunderstandings." She testified that these misunderstandings related to various activities of Droll in connection with their efforts to bring the Hesse works of art together, and her decision to sell some Hesse sculptures. At the time she wrote the letter, according to Ms. Charash, she had no idea that Droll had ever had a large number of her sister's drawings in his possession or that he had given them to Oberlin.

Despite the listings in the catalogue and bulletin, it was "incomprehensible" to Ms. Charash that no one from Oberlin had ever "verbally communicated" to her the fact of the Droll gifts. She had meetings in New York with Ellen Johnson, curator of modern art at the Oberlin art museum and correspondence with William Olander, acting director, about her own contributions to the Hesse show, and neither one ever told her of the gift of the drawings.

The record contains some conflicting references to the date of the Donald/Philip Droll gift. It appears, on balance, that it occurred late in 1981.

### II.

■ A choice of law determination is required because of Ms. Charash's argument that New York law controls. The laws of Ohio and New York disagree on the question of which party has the burden of proof in conversion and replevin actions. Ohio law places the burden on the plaintiff to prove that there was in fact a conversion of her property. *Burson v. Peoples Bank*, No. 16–92–31, 1993 WL 373523, (Ohio App. 3d Dist., Sept. 1, 1993). New York, on the other hand, holds that people deal with property at their own risk, and therefore the defendant must prove that his or her title is valid. In other words, the defendant must prove that there was *no* conversion. *Solomon R. Guggen-*

*heim Foundation v. Lubell,* 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426 (1991).

■ We review de novo a district court's determination of state law. *Salve Regina College v. Russell,* 499 U.S. 225–231, 111 S.Ct. 1217–1221, 113 L.Ed.2d 190 (1991); *National Union Fire Ins. Co. v. Watts,* 963 F.2d 148, 150 (6th Cir.1992). We likewise review a district court's grant of summary judgment de novo. *Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991).

### A.

■ It is well-settled that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Tele–Save Merchandising Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122 (6th Cir.1987). Therefore, Ohio choice of law rules are applicable here, and the Ohio Supreme Court has held that the Restatement (Second) of Conflicts governs choice of law questions in this state. *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984); *Macurdy v. Sikov & Love,* 894 F.2d 818, 820 (6th Cir.1990). As we noted in *Macurdy,* Ohio continues to recognize *lex loci delicti,* the place where the tort occurs, but that principle no longer automatically determines which state's law applies. Rather, the court must apply the Restatement analysis. *Id.*

■ Restatement (Second) of Conflicts § 147 governs "injuries to tangible things," which include conversion. Under that section, "the local law of the state where the injury occurred determines the rights ... of the parties unless ... some other state has a more significant relationship ... to the occurrence." Comment i to § 147 specifically addresses conversion and states that whether a conversion has been committed, and if it has, "the resulting rights and liabilities of the parties, will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence, the chattel, and the parties." In a case where it is charged that the defendant converted a chattel by purchasing it from a thief, the plaintiff has two burdens. She must first establish that she has title to the converted property and is entitled to its possession. This is a question of property law. Next, the plaintiff must establish that a conversion has been committed, a tort question that, "usually at least, will be determined by local law of the state where the alleged converter dealt with the property."

### B.

■ The district court found that if there was a conversion it took place in Ohio because "[t]he alleged converter, Oberlin College, dealt with the chattel drawings exclusively in Ohio." The district court did not make a determination concerning the first question. However, such analysis was not required, since in either state that burden of proof would be on Helen Charash. See, *e.g., In re Lukas,* 79 Misc.2d 24, 25, 360 N.Y.S.2d 549, 550 (1974) ("it is still necessary for the petitioner to prove her title to the property and right to possession of it"); *Fayette Investment Corp. v. Jack Johnson Chevrolet,* 119 Ohio App. 111, 113, 197 N.E.2d 373 (1963) ("In a replevin action the plaintiff must rely upon his own title or right to possession. Likewise, in an action for conversion, the plaintiff must show title or a right to possession at the time of the alleged conversion."). *Guggenheim* did not change this burden of proof under New York law; the plaintiff's right to possession was not an issue in that case.

■ The second question, the one focused on by the district court, is whether a conversion took place. This is a tort question governed by the laws of the state where the converter handled the property. In the present case, the alleged converter is Oberlin, and Oberlin, according to the evidence, dealt with the drawings only in Ohio. However, the law of the state in which the injury took place may be disregarded in favor of some other state if it is shown that the other state has a "more significant relationship ... to the occurrence, the thing and the parties." Restatement (Second) of Conflict of Laws § 147.

The "significant relationship" to "the occurrence, the thing, and the parties" may be evaluated under Restatement (Second) of Conflicts § 145, which defines the general standards for analysis in tort cases. Under that section, a "most significant contacts" test is used to determine which state law should apply. Section 145 lists four factors to be considered:

1) the place where the injury occurred;
2) the place where the conduct causing the injury occurred;
3) the domicile, residence or place of business of the parties; and
4) the place where the relationship, if any, between the parties is centered.

### C.

We find little support under any of these standards for holding that New York law governs this case.

### (1)

The place where the injury occurred was clearly Ohio. A conversion does not occur when there is only a taking of property from its rightful owner. A conversion occurs when someone exercises dominion over the property without the owner's consent or authority. As the court stated in *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir.1989), "[t]he conversion is complete when the defendant takes, detains, or disposes of the chattel." (quoting *Prosser and Keeton on Torts* 106 (5th ed. 1984)). Regardless of where Donald Droll came into possession of the drawings, it is clear that Oberlin exercised dominion over them only in Ohio.

The plaintiff argues strenuously that the facts of the case require application of New York law. She places particular reliance upon the opinion in *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990), in support of her claim that New York has the "most significant contacts" as described in the Restatement. The facts in *FMC* are similar to those in the present case. FMC sued Capital Cities in an Illinois state court for conversion and replevin of contract documents. The documents allegedly were stolen from the FMC headquarters in California. Copies of the documents were used later in a story broadcast by ABC. It was undisputed that ABC (like Oberlin College) was not directly responsible for the theft of the documents. FMC demanded the return of the documents and ABC refused. After removal to federal court, FMC argued that California law should govern the action because FMC was headquartered in California; ABC argued that New York law applied because ABC is located in New York and the documents were being held in New York. The court, using the Restatement "significant contacts" test, determined that California law applied because FMC "is located in California and is feeling the loss of its documents there." *Id.* at 302.

This conclusion would support a claim that New Jersey law should be applied, but not a claim for New York law. Under *FMC*, the loss is felt in the place where the true owner is located. Ms. Charash is a resident of New Jersey, not New York. The fact that the drawings were created in New York and are claimed to have been part of the estate of a New York resident who died more than twenty years before this action was commenced does not indicate that New York has the most significant contacts with the drawings. In any event, this court has never adopted a test of where the rightful owner "feels" the loss. We believe it is clear that the injury occurred in Ohio where the act of conversion, if indeed there was a conversion, was completed.

### (2)

Similarly, we believe that Ohio is the place where the conduct causing the injury occurred. Although she had ample opportunity to establish that Donald Droll took wrongful possession of the drawings in New York, Ms. Charash's proof was speculative at best. She was unable to identify any of the drawings positively as part of her sister's estate. They were not itemized as part of the estate inventory and the vague references to drawings of the same "kind" and "genre" in the mysterious trunk are not sufficient. Without a written inventory or anything more concrete than statements of friends that it was unlike

Ms. Hesse to give art away and Ms. Charash's testimony that "every fiber of my being says ... that it was not in her nature to give 100 drawings to anybody," we cannot hold that the conduct causing the injury occurred in New York. All the proof shows positively is that Oberlin has possessed the drawings in Ohio at least since 1981.

Ms. Charash appears to argue that the allegations of her complaint must be accepted as true. The purpose of discovery after a motion for summary judgment is to test the truth of allegations in the pleadings. FED.R.CIV.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (In the face of a motion for summary judgment, the nonmoving party cannot rest on her pleadings but must come forward with some probative evidence in support of her claim). Viewing the plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff, we conclude that there is no genuine issue of material fact with respect to either of the first two Restatement standards.

### (3)

There is even less support under the third Restatement standard for the claim that New York substantive law applies in this case. Oberlin's place of business is Ohio; Ms. Charash resides in New Jersey. Neither has a residential or domiciliary connection to New York. No resident of New York is a party, and Donald Droll's residence prior to his death is irrelevant to our inquiry.

### (4)

As to the fourth standard—the place where the relationship between the parties was centered—Ohio again has the strongest claim. There was correspondence between Ms. Charash and various Oberlin employees over the years, that is, between Ohio and New Jersey. On at least one occasion a representative from Oberlin met Ms. Charash in New York in preparation for the retrospective show. However, the Hesse art works discussed on that occasion were in the possession of Ms. Charash and were unrelated to the 44 drawings in dispute here. Ms.

Charash also visited Oberlin on at least one occasion. There is no proof that the relationship between Ms. Charash and Oberlin was ever "centered" in New York.

### D.

Section 6 of the Restatement also recommends consideration of the needs of the interstate system and the relevant policies of the states involved. Ms. Charash correctly argues that New York has an interest in protecting its citizens and their property. The *Guggenheim* case clearly expresses the extremely strong interest that New York has in protecting the property of its citizens. But Ms. Charash is not a resident of New York and she failed completely in her attempt to show that these particular drawings were part of Ms. Hesse's estate. If the drawings had been identified and included in the inventory of the artist's estate following her death, and if Ms. Charash were suing on behalf of the estate of a New York decedent, there might be some reason to consider her claims of New York's interest. But, as we have shown, neither of these factors is present.

On the other hand, Ohio also has an interest in protecting the interests of its citizens. Oberlin College is an Ohio entity and it was established that Oberlin has had possession of these works for at least eleven years. Thus, Ohio has a significant interest in the outcome of this case, and that interest is supported by the evidence in the record. While there may very well be some contacts between this case and New York, those connections are vague at best and are clearly outweighed by the Ohio interest.

### E.

In *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981), the Supreme Court identified the essence of a court's duty in determining what state's law to apply when faced with a conflict of laws decision: "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such

that choice of its law is neither arbitrary nor fundamentally unfair." Only Ohio satisfies this test on the record before us.

If, following remand, the district court's ultimate ruling on the statute of limitations issue requires a decision on the merits, the district court will apply Ohio substantive law.

### III.

We turn now to the statute of limitations question upon which the district court based its determination that this action was untimely.

### A.

▆▆▆▆ Oberlin argues convincingly that an Ohio statute of limitations governs the question of whether this action was timely. The rule in Ohio is that statutes of limitations of the forum state are applied even if the facts of the case creating the cause of action dictate the use of other substantive law. See *Howard v. Allen*, 30 Ohio St.2d 130, 133, 283 N.E.2d 167 (1972); *Barile v. University of Virginia*, 30 Ohio App.3d 190, 191, 507 N.E.2d 448, 449 (1986). See also *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir.1989) ("In deciding what substantive law applies, one must first look to the forum state's choice of law statute. However, we must apply the procedural law, including statutes of limitations, of the forum state.") In *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722, 108 S.Ct. 2117, 2121, 100 L.Ed.2d 743 (1988) the Supreme Court stated: "This Court has long and repeatedly held that the Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different state. We granted certiorari to reexamine this issue. We conclude that our prior holdings are sound." If it is permissible for a court to apply its own jurisdiction's statute of limitations in cases where the substantive law of another state must be applied, *a fortiori*, it is permissible when the substantive law of the forum applies as well.

The plaintiff argues that the Ohio Court of Appeals applied the statute of limitations of another state in a recent case. See *Lawson v. Valve–Trol Co.*, 81 Ohio App.3d 1, 4, 610 N.E.2d 425 (1991). A careful examination of the *Lawson* opinion discloses that the foreign statute which the Ohio court applied was a statute of *repose*, not a statute of limitations. The court stated: "Unlike a true statute of limitations, which limits the time in which a plaintiff may bring suit after the cause of action accrues, a statute of repose ... potentially bars a plaintiff's suit before the cause of action accrues." *Lawson*, 81 Ohio App.3d at 4, 610 N.E.2d at 425 (quoting *Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 195, 551 N.E.2d 938 (1990)).

The courts of Ohio have consistently applied Ohio's statutes of limitations, and the Supreme Court of the United States has found no constitutional impediment to this practice. The district court properly determined that this action is subject to an Ohio statute of limitation.

### B.

▆▆▆▆ Under Ohio Revised Code (O.R.C.) § 2305.091 an action for recovery of personal property or for taking or detaining it must be brought within four years after the cause of action accrues. Under the same code section the cause does not accrue "until the wrongdoer is discovered." The district court held that Ms. Charash had either actual or constructive notice that Oberlin had the drawings in question more than four years prior to commencing this action. Oberlin concedes that Ms. Charash did not have actual notice until she traveled to Ohio and saw the drawings after being advised by her author-friend that Oberlin appeared to have more of Eva Hesse's artistic works that he had anticipated.

With respect to constructive notice, however, the evidence is in sharp conflict. Ms. Charash testified that none of the communications from Oberlin between 1981 and 1988 alerted her to the fact that the college had Hesse art works in its possession other than those she had previously donated herself or had been responsible for Oberlin's receiving.

▆▆▆▆ Ohio defines constructive notice as follows:

"If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry, and he fails to do so, he is chargeable with knowledge which by ordinary diligence he would have acquired."

*Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 181, 465 N.E.2d 1298 (1984) (quoting *Schofield v. Cleveland Trust Co.*, 149 Ohio St. 133, 142, 78 N.E.2d 167 (1948)). Generally, notice, including constructive notice, is an issue of fact, and is normally determined by a jury. See, *e.g., Imes v. Touma*, 784 F.2d 756, 759 (6th Cir.1986) ("Whether the plaintiff in this case ... should have known that the injury was the result of negligence is a fact question which should not have been decided by summary judgment."); *Hill v. A.O. Smith Corp.*, 801 F.2d 217, 225 (6th Cir.1986) ("Whether the Hills should have discovered the problem earlier is not a question the trial judge or this court can answer; it is a question for the jury."). However, this issue can be decided on a summary judgment motion if the movant can show that no issues of material fact exist regarding this issue. *Lenz v. Erdmann Corp.*, 773 F.2d 62, 63 (6th Cir.1985).

Viewing the evidence in the light most favorable to Ms. Charash, we do not believe it can be held that she failed to raise a question of material fact with respect to notice. She testified unequivocally that the foreword to the traveling catalogue did not signify to her that Oberlin possessed Hesse works of art not included among those she had previously donated or authorized. Donald Droll had been involved in her own gifts. She also testified that the letter from the acting director of the museum, William Olander, enclosing the Oberlin Alumni Magazine for Autumn 1982 said nothing about the Droll gift, and she did not read the magazine. Likewise, Ms. Charash stated that she never read the 1982 museum bulletin referring to the Donald/Philip Droll transfer. Further, as a patron of the Oberlin art museum, she received a great deal of "stuff" from the college and did not read it all by any means.

On the entire record we conclude that the issue of constructive notice was not subject to summary disposition. Thus, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.