Chet Harvey ADKINS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2555.

Court of Appeals of Alaska.

July 21, 1989.

Alex Swiderski, Asst. Public Defender, Palmer, and Dana Fabe, Public Defender, Anchorage, for appellant.

Steven H. Morrissett, Dist. Atty., Palmer, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Chet Harvey Adkins was convicted after pleading no contest to a charge of second-degree murder. Superior Court Judge Beverly W. Cutler sentenced Adkins to serve fifty years in prison. Adkins appeals, contending that his sentence is excessive. We affirm.

On March 23, 1987, Adkins took K.K. to the residence where he was staying while visiting Anchorage. There, Adkins shared some cocaine with K.K. According to Adkins, K.K. demanded more cocaine; when he refused to give it to her, K.K. began yelling and threatened to report him to the police. Adkins claimed that he attempted to subdue K.K. by covering her mouth with his hand. He then tied her up and gagged her with a belt. Adkins then left for a brief period. When he returned, he found

that K.K. was dead. Adkins loaded K.K.'s body into the trunk of his car and drove to a location outside of Palmer. There, he attempted to conceal the body.

The evidence in the record casts doubt on portions of Adkins' account of the crime. K.K.'s body was discovered by the police five days after Adkins disposed of it. K.K. was naked from the waist down. An autopsy revealed that she had been choked, severely beaten about the face and head, and gagged. A subsequent search of Adkins' car yielded evidence indicating that a struggle had occurred inside the car.

The pathologist who performed the autopsy of K.K. concluded that she had been choked to death. At Adkins' sentencing hearing, however, another pathologist testified that, in his opinion, K.K. had more likely died of asphyxia as a result of the gag placed over her mouth.

At the time of the offense, Adkins was twenty-seven years of age. His criminal record included several misdemeanors: convictions in 1979 for commercially fishing during a closed period and illegal sale of liquor, and a conviction in 1981 for disorderly conduct. In addition, Adkins had a felony conviction in 1983 for sale of alcohol in a dry community and possession of alcohol with intent to sell. He was on probation for the felony at the time of the murder.

Evidence presented at the sentencing hearing established that Adkins had a history of violent assaults against women. In November of 1986, while in Bethel, Adkins struck C.K., a female acquaintance, in the face with his fist. Based on this incident, the state sought to revoke Adkins' felony probation. Adkins admitted violating the conditions of his probation by committing the assault and was on release pending disposition of the probation revocation action when he committed the murder in the present case.

In addition, in the spring of 1986, Adkins accompanied B.K. to an empty apartment. He gave B.K. some cocaine and offered her $50 for sexual favors. B.K. refused. Adkins became angry, threw her to the floor, and began strangling her. He accused B.K. of stealing from him and told her he was going to kill her. B.K. managed to struggle free when Adkins loosened his grasp. She escaped Adkins by plunging through a glass window.

In sentencing Adkins, Judge Cutler emphasized the sentencing goals of isolation, community condemnation, and deterrence of others. The judge found Adkins' conduct to be more serious than the norm for the offense, because of the "level of dangerousness" that Adkins had exhibited in his other conduct. In view of Adkins' prior felony conviction, his history of assaultive conduct toward women, and his apparent problem with drug abuse, the judge further concluded that he was a serious danger to the community. Based on these conclusions, Judge Cutler determined that Adkins deserved a sentence more serious than the typical sentence for second-degree murder.

On appeal, Adkins contends that the sentencing court erred in exceeding the twenty- to thirty-year benchmark for second-degree murder that this court established in *Page v. State*, 657 P.2d 850 (Alaska App. 1983). However, the record supports the sentencing court's evaluation of the seriousness of Adkins' conduct and of the danger that he poses to the community.

In *Page*, we approved a maximum term of 99 years for second-degree murder. Adkins' case shares several prominent features with *Page*. Adkins, like Page, committed a serious assault, then left his bound and gagged victim to die. Adkins, like Page, suffers from a serious substance abuse problem that contributed to the commission of the offense. Adkins, like Page, has a prior felony record.

Certainly, Adkins' case is more mitigated than Page's in certain significant respects. Adkins' background is generally more favorable than Page's. His prior criminal record is less serious, and his physical assault was not as brutal as Page's. The more mitigated nature of Adkins' offense, however, was recognized by Judge Cutler;

the judge elected to impose a sentence that was significantly less severe than the maximum term we approved in *Page*.

 Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). Accordingly, the sentence is AFFIRMED.[1]

**1.** Adkins also contends that the sentencing court violated *Jackson v. State*, 616 P.2d 23 (Alaska 1980), by considering his eligibility for parole in imposing sentence. We find no merit to this contention. *Jackson* cautioned against calculating the length of a sentence on the assumption that the defendant would in fact be released from prison upon becoming eligible for parole. Nothing in *Jackson* precludes sentencing courts from taking parole eligibility into account as part of the overall sentencing process. Here, the sentencing court did not base Adkins' term on the assumption that he would in fact be released upon becoming eligible for parole. Rather, the court merely noted that the possibility for parole existed, and the court encouraged Adkins to make every possible effort to benefit from his period of incarceration, in order to maximize his opportunity for early release.