STATE of Alaska, Petitioner,

v.

Michael Alan WENTZ, Respondent.

No. S-3498.

Supreme Court of Alaska.

Feb. 1, 1991.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions & Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for petitioner.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Following his conviction for first degree assault, the superior court sentenced Michael Alan Wentz to a fifteen year term of imprisonment with three years suspended. Wentz appealed, claiming that his sentence was too severe. The court of appeals concluded that the superior court was clearly mistaken and ordered its sentence modified to fifteen years with five years suspended.[1] We reverse.

I

Wentz was convicted, after pleading no contest to a single count of first degree assault,[2] for injuries inflicted upon his wife,

---

1. With only minor alterations and omissions, we reiterate here the version of the facts outlined by the court of appeals in *Wentz v. State,* 777 P.2d 213 (Alaska App.1989).

2. Wentz was convicted of violating AS 11.41.-200(a)(1) (recklessly causing serious physical in-

jury by means of a dangerous instrument). *Wentz,* 777 P.2d at 214. The maximum penalty for this offense is 20 years imprisonment; the presumptive term for a first felony offender is five years imprisonment. AS 12.55.125(c).

F.S. *Wentz v. State*, 777 P.2d 213, 214 (Alaska App.1989). Wentz apparently believed that his wife had had sexual intercourse with another man. *Id.* In an intoxicated state, he severely beat F.S., fracturing her skull and causing other serious injuries. *Id.* Wentz did not secure medical assistance for F.S. until approximately seven hours after the beating. *Id.*

As a result of the assault, F.S. required protracted hospitalization and suffered permanent brain damage. *Id.* Her injuries were particularly dangerous to F.S. because she suffered from a serious heart condition that made her vulnerable to infection. *Id.* F.S. had been scheduled to undergo open heart surgery in January 1988, to replace a faulty heart valve. *Id.* The surgery was postponed because of her injuries. *Id.* In addition, F.S. was deaf and mute. *Id.*

At the time of sentencing, approximately six months after the assault, F.S. was still confined to a nursing home. *Id.* Although her condition had improved, F.S. still had no immediate prospect of being discharged. *Id.*

Wentz was thirty-two years old when he committed the offense. *Id.* Although he had never been convicted of a felony, Wentz had twelve prior misdemeanor convictions. *Id.* Three of these were for assaultive conduct, one involving an assault upon F.S. *Id.* All of Wentz's prior offenses appear to have been alcohol related, reflecting his long-standing problem with alcohol abuse. *Id.* On four prior occasions, Wentz had completed male awareness programs. *Id.* Despite his numerous misdemeanor convictions, Wentz had never served any significant period of time in jail. *Id.* He was on informal probation for his most recent misdemeanor conviction, a fourth-degree assault, when he committed the current offense. *Id.* at 215.

Before imposing sentence, the trial court found two aggravating factors to be applicable: first, Wentz committed the offense

upon his spouse, AS 12.55.155(c)(18); second, Wentz committed the offense knowing that F.S. was particularly vulnerable by virtue of her heart condition and deafness, AS 12.55.155(c)(5). *Id.*[3] The court also relied on Wentz's prior misdemeanor record and his continued problems with alcohol abuse, concluding that Wentz was a dangerous offender and that his prospects for rehabilitation were poor. *Id.* Based on these conclusions, and upon the seriousness of Wentz's current charge, the court concluded that a sentence significantly exceeding the five-year presumptive term was necessary for the protection of the community. *Id.* Accordingly, the court sentenced Wentz to a term of fifteen years with three years suspended. *Id.*

The court of appeals held that an actual term of imprisonment in excess of ten years was inconsistent with its own decisions limiting to ten years the maximum prison term for certain class A and class B felonies. *Id.* at 215–16. Specifically, the court relied upon its ruling in *Pruett v. State*, 742 P.2d 257, 264 (Alaska App.1987), where the court held:

> Sentences of ten years or more for conduct equivalent in seriousness to class A felonies under current law have generally been based on isolation as a goal of sentencing and *have been reserved for those with a proven record of recidivism, or those whose conduct involved premeditated attempts to kill or seriously injure.*

(emphasis added). The court also relied upon *Holtzheimer v. State*, 766 P.2d 1177, 1180 (Alaska App.1989), which refines somewhat the "proven record of recidivism" language of *Pruett*. *Holtzheimer* states:

> In cases involving class A and class B felonies, we have consistently recognized that composite terms exceeding ten years of imprisonment *should be reserved for offenders who have prior felony records*

---

**3.** The court rejected one aggravating factor proposed by the state: that Wentz's conduct was among the most serious within the definition of the offense, AS 12.55.155(c)(10). *Wentz*, 777

P.2d at 215. The court concluded that F.S.'s injuries were not sufficient to establish this aggravating factor by clear and convincing evidence. *Id.*

*and who have spent substantial periods of time in prison.*

*Id.* at 1180 (emphasis added).

The court concluded that Wentz's case failed to fit under either exception to the ten-year sentence cap established in *Pruett, Holtzheimer,* and other cases. *Wentz,* 777 P.2d at 216.[4] Accordingly, it reversed the trial court's sentence of fifteen years with three suspended, and remanded with directions that a new sentence be imposed not exceeding fifteen years with five years, rather than three, suspended. *Id.* at 216–17. We granted the state's petition for hearing.

## II

Assault in the first degree is a class A felony. AS 11.41.200(b). In AS 12.55.-125(c) the legislature has declared class A felonies to be subject to a maximum prison term of 20 years; however, the presumptive term for first felony offenders, "subject to adjustment" for aggravation and mitigation, is five years imprisonment. AS 12.55.125(c)(1). Where aggravating factors are found, the sentencing court is authorized to "increase the presumptive term up to the maximum term of imprisonment." AS 12.55.155(a)(2).

When considering the appropriate adjustment of sentence for an offender based upon a finding of aggravating or mitigating circumstances, the trial court is to consider the following factors: (1) the seriousness of the defendant's present offense in relation to other offenses; (2) the prior criminal history of the defendant, and the likelihood of rehabilitation; (3) the need to confine the defendant to prevent further harm to the public; (4) the circumstances of the offense, and the extent to which the offense harmed the victim, or endangered the public safety or order; (5) the effect of the sentence to be imposed in deterring the defendant or other members of society

from future criminal conduct; and (6) the effect of the sentence to be imposed as a community condemnation of the criminal act, and as a reaffirmation of societal norms. AS 12.55.005; *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). The priority and relative weights of these criteria are left to the discretion of the sentencing judge, *Nukapigak v. State,* 663 P.2d 943, 945 (Alaska 1983), and the sentence imposed by the trial court may be reversed only where the appellate court, after independent review of the record, "is convinced that the sentencing court was clearly mistaken in imposing a particular sentence." *State v. Graybill,* 695 P.2d 725, 729 (Alaska 1985) (quoting *McClain v. State,* 519 P.2d 811, 813 (Alaska 1974)).

Applying the foregoing principles to the case at bar, it is apparent that the trial court was permitted, under AS 12.55.-155(a)(2), to increase Wentz's five-year presumptive term by as much as fifteen years, depending upon the number and severity of statutory aggravating factors present, and the appropriate weight to be afforded the various, legislatively authorized criteria for adjustment of sentence under AS 12.55.005. After considering these criteria, and finding two statutory aggravating factors to be present, the trial court sentenced Wentz to fifteen years with three years suspended. Wentz's total term of imprisonment was, therefore, five years less than the statutory maximum, and his term of actual imprisonment was *eight years less* than that amount.

The court of appeals, nonetheless, concluded that the trial court was "clearly mistaken" in sentencing Wentz to fifteen years with three suspended, holding that it should have sentenced him, instead, to no more than fifteen years with *five* suspended. *Wentz,* 777 P.2d at 217. As already noted, the decision was based upon the

---

4. The court explicitly distinguished this case from *Sweetin v. State,* 744 P.2d 424 (Alaska App.1987), wherein the court upheld a 31-year sentence with five years suspended for a defendant convicted of two first degree assaults, one third degree assault, and one count of criminal non-support. The court of appeals observed

that *Sweetin* involved "particularly egregious act[s] of deliberate cruelty" which fell within that class of offenses characterized in *Pruett* as "premeditated attempts to kill or seriously injure," whereas Wentz's crime "was impulsive rather than deliberate and premeditated." *Wentz,* 777 P.2d at 216.

court of appeals' own cases holding that "composite terms exceeding ten years of imprisonment" for class A and class B felonies are "reserved for" cases in which the defendant either (1) "[has a] prior felony record[ ] and [has] spent substantial periods of time in prison" or (2) has engaged in "conduct involv[ing] premeditated attempts to kill or seriously injure." *Wentz,* 777 P.2d at 216 (quoting *Holtzheimer,* 766 P.2d at 1180 and *Pruett,* 742 P.2d at 264). We believe that the court of appeals' "ten-year rule" is both inconsistent with the statutory scheme established by the legislature and contrary to our prior decisions concerning the proper role of the appellate courts in reviewing sentencing decisions.

It is certainly not apparent that any such limitation was intended by those enacting the legislative scheme which the court of appeals professes to advance. Indeed, the statutory language itself provides that, where statutory aggravating factors are present, *the presumptive five-year sentence for first felony offenders may be increased from one to fifteen years, in the sound discretion of the sentencing court, subject only to the strictures of AS 12.55.-005.* The practical effect of the court of appeals' ten-year limitation, in this case and others like it, is to reduce by two-thirds the range of acceptable sentences *expressly authorized* by the legislature in this context.

Under the rule applied by the court of appeals in this case, a first time felony offender would never receive more than half the maximum term of imprisonment, unless one of the specific aggravating factors *deemed sufficient by the court of appeals* is present. However, the court's abbreviated list of aggravating factors (which includes only prior felony offenses and "premeditated attempts to kill or injure") is in direct conflict with the more lengthy list of aggravating factors which the legislature has proclaimed sufficient. The legislative scheme allows imprisonment for up to twenty years for class A felonies, upon proof of one or more of *twenty-six* enumerated aggravating factors. *See* AS 12.55.125; AS 12.55.-155(c)(1)–(26). Under the court of appeals'

ruling, a trial court cannot sentence an offender to the maximum term, regardless of the presence, strength, or number of statutory aggravating factors, unless it can demonstrate that the case meets one of the two exceptions to the court of appeals' ten-year rule. We hold that such a result is in direct conflict with the language of the statute and is therefore impermissible.

In simple terms, the legislature, as part of its comprehensive sentencing scheme, has directed that a sentence may be adjusted "up to the maximum," under specified circumstances. The court of appeals' implicit conclusion that the legislature meant "up to the maximum *only where an offender has committed prior felonies and served substantial jail time, or where the crime involves premeditated attempts to kill or seriously injure"* is at odds with the plain language of the statutory scheme.

The court of appeals' result is also at odds with the "clearly mistaken" standard of review established long ago by this court in *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). In *McClain,* we recognized that, "[a]nalytically, the clearly mistaken test implies a *permissible range of reasonable sentences* which a reviewing court, after an independent review of the record, will not modify." *Id.* at 813 (emphasis added). This "range of reasonableness," we believe, should be determined not by imposition of an artificial ceiling which limits a large class of offenses to the lower end of the sentencing spectrum, but, rather, by an examination of the particular facts of the individual case in light of the *total range of sentences authorized by the legislature for the particular offense.*

We have recognized that "the maximum sentence for a particular offense expresses a legislative judgment about how the worst offender within a class designated by the legislature should be treated." *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971); *see also Walls v. State,* 598 P.2d 949, 950–51 (Alaska 1979). Conversely, the presumptive term for a given offense represents a legislative determination of the minimum sentence appropriate for that offense in the absence of aggravating or mitigating cir-

cumstances. *See Smith v. State*, 711 P.2d 561, 567 (Alaska App.1985) (in absence of aggravating or mitigating factors an individual sentencing judge has no discretion to deviate from presumptive term). Between these extremes, lies a wide range of potential sentences. Those in the upper end of the spectrum should, of course, be reserved for more serious offenses and offenders, while those in the lower end are appropriate for less grave criminal offenders and criminal conduct.

Whether a particular offense is sufficiently serious to justify placing it in the upper rather than lower end of the sentencing range, however, cannot be determined with mathematical certainty. Such questions are not easily resolved by resort to "bright line" rules or pronouncements concerning the "correct" sentence to be applied under varying factual circumstances. For example, it cannot be stated categorically that a felony assault committed by an offender with a long string of prior misdemeanor assaults is necessarily less serious than a felony assault committed by an offender with a single prior felony conviction. Such questions must be answered by refer-

ence to the particular facts of the individual case, and are therefore matters properly left to the sound discretion of the sentencing judge. *See Nukapigak*, 663 P.2d at 945 (priority and relative weights of sentencing criteria are left to discretion of sentencing judge); *Padie v. State*, 594 P.2d 50, 62 (Alaska 1979) (superior court "retains broad discretion in sentencing" under *Chaney* criteria).

As we observed in *Creer v. State*, 600 P.2d 1095 (Alaska 1979), "[s]entencing must be based on the facts of the particular offense and the history of the individual defendant." *Id.* at 1095–96. We believe that the rigid approach applied by the court of appeals in the instant case tends to undercut this principle by artificially grouping substantially different offenses and offenders together in the lower end of the authorized sentencing range. Accordingly, the ten-year rule applied by the court of appeals in the instant case is disapproved.[5]

In so ruling, we do not mean to suggest that the court of appeals may not adopt *any* standards in order to guide the trial courts in the exercise of their discretion in sentencing.[6] On the contrary, in *Karr v.*

5. The court of appeals based its ten-year standard, in large part, upon the ABA Standards for Criminal Justice, on Sentencing Alternatives and Procedures (1980), which would permit imposition of a sentence in excess of ten years only where the defendant has been convicted of two or more prior felonies and has served at least one year in prison within the preceding five years. *Id.* at §§ 18–2.1(e), 18–4.4(c). Although we have often cited the ABA Standards with approval in the past, *see, e.g., Pascoe v. State*, 628 P.2d 547, 550 (Alaska 1980); *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974), we have also stated that "the ABA Standards are not a code which we are bound to follow in all circumstances," *Davis v. State*, 566 P.2d 640, 644 (Alaska 1977), and that "we will evaluate the individual case to determine if the [ABA Standard] is appropriate." *Graybill*, 695 P.2d at 729. Where, as here, the ABA Standards tend to conflict with the presumptive sentencing scheme established by the legislature, the latter will prevail.

We note also that our own decision in *Pears v. State*, 698 P.2d 1198 (Alaska 1985) is not controlling here. In *Pears*, the court reversed as excessive a twenty-year sentence for second degree murder and second degree assault arising out of an automobile accident caused by an intoxicated driver. *Id.* at 1205. Two members of the three-justice majority stated that they

"believe[d] that the maximum sentence imposed should not exceed ten-years' imprisonment" under the facts of that case. *Id.* at 1205 n. 15. Presumably, this was intended as a fact specific suggestion. It may now have achieved an elevated importance as the court of appeals attempts to interpret the third justice's silence on the question of an appropriate maximum. *See, e.g., Jones v. State*, 744 P.2d 410, 413–16 (Alaska App.1987). The court's holding in *Pears*, however, was based upon the particular facts before us therein, and we believe that attempts to extend either the holding or the dicta of the *Pears* decision beyond the facts of that case would be in error.

6. "The court of appeals has jurisdiction to hear appeals of sentences of imprisonment by the superior court on the grounds that the sentence is excessive or too lenient ...," AS 22.07.020(b), and "[a] final decision of the court of appeals is binding on the superior court ... unless superseded by a decision of the supreme court," AS 22.07.020(g). *The court of appeals, however, has no authority to promulgate general rules of practice and procedure in those courts.* Only this court has such authority. *Lee v. State*, 374 P.2d 868, 869 (Alaska 1962); Alaska Const. art. IV, § 15. Moreover, as was observed in a recent article appearing in the *Alaska Law Review*,

*State*, 686 P.2d 1192, 1195 (Alaska 1984), we applied, without disapproval, the court of appeals' longstanding *"Austin* rule," which provides that "[n]ormally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender." *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981). As the court of appeals observed in *Austin*, however, the rule announced therein did not suggest "that a first offender [may] *never* receive more time to serve than the presumptive term for a second offender"; it merely limited application of the higher term to the "exceptional case." *Id.* at 658.

Properly applied the "exceptional case" standard enunciated in *Austin* allows the trial court sufficient discretion to exceed the presumptive term for second felony offenders where a particularly compelling set of aggravating factors (AS 12.55.155) or *Chaney* criteria (AS 12.55.005) militate in favor of an increased sentence. We believe that the case before us clearly represents an "exceptional case" which, under the *Austin* rule, justifies a sentence for a first felony offender in excess of the presumptive term for a second felony offender.[7]

> There are drawbacks ... to relying too heavily on appellate review to articulate sentencing principles and to fine-tune sentences. Appellate review by its very nature is backward-looking. It is the proper role of the appellate court to examine what has occurred in a specific case, and to pass on the propriety of the result in that case only. It is generally accepted that an appellate court is effective only when it decides cases based on the factual record before it and only after the record in that case has been completely developed. As a rule, it cannot and should not anticipate what other factual situations might arise in the future, nor should it fashion rules prospectively.
> ... [T]he court of appeals, ... creates target benchmarks by looking back and reviewing sentences previously approved in similar cases. It then synthesizes all the cases in that area, often publishing a decision making explicit the reasoning implicit in its previous decisions. While this is entirely appropriate behavior for an appellate court, it means that the court of appeals cannot shape sentencing law prospectively, because it cannot choose the cases that come before it, and it cannot decide cases with an eye to what might happen in the future. In addition, the court's process of deciding numerous cases in an area and then publishing a decision distilling the general principle is often confusing to the practitioner, who is sometimes left with dozens of cases and no concrete rule.
> It is the function of a legislature to shape law prospectively. Besides being able to look forward, a legislature can establish sentencing policy in the context of other considerations, such as the overall allocation of the state's resources. This legislative function complements the appellate courts' review of individual cases and synthesis of the individual decisions into a comprehensive set of interpretations of the statutes and constitution.
> DiPietro, *The Development of Appellate Sentencing Law in Alaska,* 7 Alaska L. Rev. 265, 296 (1990).

7. Although the dissent suggests that we remand to the court of appeals for separate consideration of the *Austin* issue, such a remand is not necessary in this case. While future decisions of the court of appeals will define the outer boundaries of exceptional circumstances, we hold here that when a man with a history of assaultive behavior beats his particularly vulnerable wife almost to death, causing permanent brain damage, it is an "exceptional case."

 The victim in this case, Michael Wentz's wife, is deaf and mute, with a congenital heart condition which makes her particularly vulnerable to assault. Wentz, apparently in a jealous rage aggravated by alcohol, beat her so severely that she was required to spend 112 days in the hospital, 56 of those in intensive care. Despite her moans of pain, Wentz failed to secure any medical assistance for his wife until approximately seven hours after the incident, when it became apparent to Wentz that she might die. Wentz's wife suffered permanent brain damage, which had manifested itself, at the time of sentencing, in memory lapses and a difficulty in walking.

This was not Wentz's first incident of alcohol-related violence; it was not even the first time he had been convicted of beating his wife. In July 1987, Wentz pled no contest to assault in the fourth degree for choking and striking his wife. In December of 1987, Wentz was again convicted of assault in the fourth degree, this time for attacking a bartender who attempted to intervene while Wentz was "pushing [his wife] around" in a bar.

Before these events occurred, Wentz had amassed a substantial record of alcohol-re-

lated misdemeanor offenses, including numerous instances of disorderly conduct and property damage. Also, as noted by the trial court, Wentz failed four separate alcohol rehabilitation efforts, and his drinking clearly "manifest[ed] itself in ... violent behavior."

Given these circumstances, it cannot reasonably be said that the trial court was clearly mistaken when it suspended three rather than five years of Wentz's fifteen-year sentence. *See generally Karr*, 686 P.2d at 1195 ("degree of harm inflicted upon the victim" and "magnitude and manner" of crime relied upon to find case "exceptional" under *Austin* rule); *Walls*, 598 P.2d at 951 (defendant's "repeated[ ] fail[ure] to respond to ... rehabilitative efforts" and lack of "inclination or motivation to control his admitted [alcohol and drug] abuse" relied upon to find defendant a "worst offender" subject to maximum sentence); *Hansen v. State*, 657 P.2d 862, 864 (Alaska App.1983) (defendant's "long record of misdemeanor offenses" involving alcohol-related assaults, thefts, and disorderly conduct rendered offense an "exceptional case" under *Austin*). Accordingly, the court of appeals' decision is REVERSED and this case is REMANDED with instructions that the trial court's sentence of fifteen years with three years suspended be reinstated.

MATTHEWS, C.J., with whom RABINOWITZ, J., joins dissenting.

MATTHEWS, Chief Justice, with whom RABINOWITZ, Justice, joins, dissenting.

### I.

The ABA Standards for Criminal Justice state in part: "for most offenses, the maximum prison term authorized ought not to exceed ten years and normally should not exceed five years. Longer sentences should be reserved for particularly serious offenses committed by particularly dangerous offenders...." 3 American Bar Association, Standards for Criminal Justice § 18–2.1(e) (2d ed. 1980). The standards essentially define "dangerousness" in terms of repetitive criminality, requiring that the offender have been previously convicted of two felonies within the last five years and have spent in excess of one year in prison. *See id.*, § 18–4.4(c). The 10–year benchmark employed by the court of appeals in this case is similar to and, in part, based on the ABA rule.[1]

This court has long looked to the ABA standards for guidance. Beginning in 1974, we approved the previous ABA recommendation that "except for cases involving *particularly* serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not to exceed 5 years." *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974) (emphasis in original). We adhered to this recommendation in later cases. *See Black v. State*, 569 P.2d 804, 805 (Alaska 1977); *Salazar v. State*, 562 P.2d 694, 697 (Alaska 1977).

After passage of the Revised Criminal Code in 1978, this court continued to look to § 18–2.1(e) for guidance in sentencing. In fact, several times we felt the need to justify the imposition of sentences in excess of the ABA's *five*-year recommendation for "normal" cases. *See Pascoe v. State*, 628 P.2d 547, 550 (Alaska 1980); *State v. Graybill*, 695 P.2d 725, 730 (Alaska 1985). The standards have continued to be influential with this court on a number of sentencing issues. *See, e.g., Pears v. State*, 698 P.2d 1198, 1204–05 (Alaska 1985)

---

1. The 10–year rule adopted by the court of appeals permits sentences in excess of 10 years more broadly than the ABA standards. Whereas the ABA version seems to provide for an extended sentence only in cases of recidivists, *see* § 18–2.1(e), the court of appeals' version provides for such sentences for *either* recidivists *or* "those whose conduct involved premeditated attempts to kill or seriously injure." *Pruett v. State*, 742 P.2d 257 (Alaska App.1987). Moreover, the court of appeals' 10–year rule applies only to class A or class B felonies. Thus, for example, it does not limit sentences for first- or second-degree murder. *See, e.g., Denbo v. State*, 756 P.2d 916, 917 (Alaska App.1988) (affirming 75–year sentence for first-degree murder in case of 21 year old with no previous felony convictions); *Adkins v. State*, 776 P.2d 1058, 1059 (Alaska App.1989) (affirming sentence exceeding the 20- to 30-year benchmark for second-degree murder established in earlier case).

(justification for and length of prison term); *Leuch v. State*, 633 P.2d 1006, 1010–11 (Alaska 1981) (necessity of confinement). Thus we have relied on the ABA standards in our sentencing decisions before and after revision of the Criminal Code.

In my view, the court of appeals' 10–year benchmark is salutary. It expresses a sentencing guideline which is supplemental to but not inconsistent with our statutory system of presumptive sentences. It adds structure and meaning to the unquantified list of 26 aggravating factors set out in AS 12.55.155(c). Without guidelines of this nature any one of the 26 statutory factors might be thought sufficient to increase a presumptive sentence to the maximum possible sentence for the offense in question (for example, from 5 years to 20 years to use the range presented by the present case). The *Austin* rule discussed and approved in the majority opinion and in part II of this dissenting opinion serves the same function.

The goal of Alaska's presumptive sentencing system is "the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences." AS 12.55.005. This goal is furthered by the 10–year benchmark since it sets out with fair specificity when a sentence in excess of 10 years may be warranted.

Further, the objective of our statutory system of appellate review of sentences[2] is the regulation of the broad range of sentencing discretion granted to trial judges. DiPietro, *The Development of Appellate Sentencing Law in Alaska*, 7 Alaska L.Rev. 263, 270 (1990). It was anticipated that this discretion would be curbed not only by review of individual sentences, but by the development of rules which would evolve in the course of individual case adjudication:

Proponents of appellate review argued that appellate judges could regulate trial court discretion in two ways: they could review individual sentences, modifying those found to be excessive or too lenient, and they could in the process articulate standards and guidelines governing the imposition of criminal sanctions.

*Id.* The 10–year benchmark is a rule which has been articulated in the course of case-by-case adjudication just as the proponents of appellate review of sentencing anticipated. For the majority opinion to conclude, as it does, that the benchmark is unauthorized simply because a higher sentence was within the maximum range permitted by statute is profoundly contrary to the reform contemplated by the legislature when it instituted appellate review of sentences.

For the above reasons, I disagree with today's majority opinion which eliminates the 10–year benchmark.

## II.

As noted, the court of appeals disapproved of the sentence imposed by the trial court on the basis of the 10–year benchmark. There is another guideline which potentially governs this case which the court of appeals did not discuss. This is the so-called "*Austin* rule," which provides that: "[n]ormally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender." *Austin v. State*, 627 P.2d 657–58 (Alaska App.1981) (per curiam). The *Austin* rule, however, does not apply to the "exceptional case." *Id.* at 658. Under the *Austin* rule, Wentz's sentence could not exceed 10 years since that is the presumptive sentence which a second felony offender would receive for the crime of which Wentz stands convicted.

The court of appeals did not reach the question whether the *Austin* rule or the "exceptional case" exception applied in this case.[3] It seems to me that the majority

---

**2.** Appellate review of sentences was authorized by the legislature in 1969 with the passage of what is now AS 12.55.120.

**3.** Although Wentz did not press hard on the *Austin* issue before the court of appeals, he did raise the issue. In arguing that his sentence

was excessive, Wentz began by showing that his sentence exceeded the presumptive sentence for a second offender and that the *Austin* rule allowed this only in exceptional cases. He proceeded to argue that his case was comparable to other cases where only 10 years total imprison-

should, taking the view that it has of the 10–year benchmark, remand this case to the court of appeals, with instructions to determine whether this case is governed by *Austin* or whether it is exceptional. Instead, the majority asserts that "the case before us clearly represents an 'exceptional' case" under the *Austin* rule.

Like my colleagues, I think that this is a serious and tragic case. Unfortunately, our criminal law reports contain a pantheon of serious and tragic cases. Among the class of cases relevant here, first degree assault charges where aggravating factors exist which justify a sentence greater than the five-year presumptive term, it is not clear to me that this case is necessarily exceptional. Serious physical injury is an element of first degree assault, AS 11.41.-

200, and at least one aggravating factor, such as vulnerability of the victim, must be present before the sentencing judge can even slightly increase the sentence to one greater than five years. AS 12.55.-125(c)(1).[4]

The normal division of functions between a final and an intermediate appellate court requires that reasonably arguable questions such as this be answered by the intermediate court in the first instance.[5] This is especially true where the answer is one uniquely within the special competence of the intermediate court as is the case here, since the court of appeals reviews hundreds of criminal cases annually while the exposure of this court to the criminal caseload is far more limited.[6] Thus the court

---

ment was imposed. However, the court of appeals did not address the *Austin* issue in its opinion, perhaps because its resolution of the 10–year benchmark issue made any decision on the *Austin* issue unnecessary.

4. For cases involving serious physical injury where there was no finding of exceptionality, *see Pruett v. State*, 742 P.2d 257 (Alaska App. 1987) (defendant, whose background included possible involvement in the death of her husband and suborning of perjury, struck an elderly person on a daily basis with a hammer); *Rhodes v. State*, 717 P.2d 422 (Alaska App.1986) (defendant fractured his infant daughter's skull); *cf. Smith v. State*, 739 P.2d 1306 (Alaska App.1987) (defendant fled scene of accident in which he negligently caused death of other driver). Cases which were found to be "exceptional" are distinguishable from *Wentz: Sweetin v. State*, 744 P.2d 424 (Alaska App.1987) (deliberate burning, dropping, and near drowning of infant daughter resulting in, among other things, serious brain damage, blindness, and deafness); *Seymore v. State*, 655 P.2d 786 (Alaska App.1982) (court placed primary emphasis on former convictions for similar sexual offenses involving the same victim, the defendant's stepdaughter); *Koganaluk v. State*, 655 P.2d 339 (Alaska App.1982) (per curiam) (defendant, with two state felony convictions and more recent misdemeanors, violently raped a vulnerable elderly woman in her home); *Austin v. State*, 627 P.2d 657 (Alaska App.1981) (per curiam) (defendant's extensive record included many charges which would have been felonies if he had been an adult at the time of the offense).

5. *See State v. Ridgely*, 732 P.2d 550, 551 (Alaska 1987) (remand after reversing court of appeals for consideration of issues left undecided in original opinion); *Relational Sys. Int'l Corp. v.*

*Cable*, 303 Or. 71, 733 P.2d 1379, 1379–80 (1987) (en banc) (per curiam) (remand necessary after reversing court of appeals where that court had addressed only one of two assignments of error); *Lasher v. Mueller Brass Co.*, 392 Mich. 488, 221 N.W.2d 289, 293 (1974) (remanded to court of appeals to get benefit of its reasoning if subsequent appeal proved necessary); *Warren v. Crockett*, 211 Tenn. 173, 364 S.W.2d 352, 355 (1962) (remanded to court of appeals where the court was instructed to consider the issues which were presented to it yet not decided because of its initial ruling); *Driver v. Worth Construction Co.*, 154 Tex. 66, 273 S.W.2d 603, 610 (1954) (no jurisdiction to consider issues not ruled on by court of appeals thus requiring remand to that court for consideration). This approach is not uniformly followed. *See, e.g., Capitol Brick Inc. v. Fleming Manufacturing Corp.*, 722 S.W.2d 399, 401–02 (Tex.1986) (where option exists to remand or rule on issue left unresolved by intermediate court, the better practice is to decide the issue).

6. As one commentator has stated:

The court of appeals, which has decided well over 1,100 sentence appeals since its creation in 1980, has adopted the role envisioned by the original proponents of appellate review. It routinely reduces excessive sentences to bring them in line with sentences given in comparable cases, and has created an extensive body of case law articulating appropriate sentencing principles, establishing benchmark terms for many classes of offenses, and establishing standards for the extent to which sentences can be increased in aggravated cases. ... By virtue of the volume and completeness of the sentencing law that it has created, the Alaska Court of Appeals is one of the most active sentence review courts in the nation.

of appeals is better situated than we are to determine whether this case is truly exceptional. On this ground, as well, I disagree with the present opinion.

DiPietro, *The Development of Appellate Sentencing Law in Alaska,* 7 Alaska L.Rev. 265, 295