NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

TERRY ALLEN TURNER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13642
Trial Court No. 3AN-19-07678 CR

O P I N I O N

No. 2784 — July 5, 2024

Appeal from the Superior Court, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Jay A. Hochberg, Attorney at Law, Honolulu, Hawaii, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Heather Stenson, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge TERRELL.

Terry Allen Turner was convicted, following a jury trial, of second-degree robbery and fourth-degree theft after he tried to steal alcohol from a liquor store.[1] He received a composite sentence of 4 years and 6 months to serve.

Turner raises two claims on appeal. First, Turner argues that the superior court failed to accurately respond to jury questions about the applicable culpable mental state for the element of robbery that requires that the defendant "use[] or threaten[] the immediate use of force."[2] We have reviewed the trial record and we conclude that although the court's responses could have been clearer, there is no reasonable possibility that the jury convicted Turner on a legally impermissible theory.

Second, Turner notes that the superior court erroneously thought that he was eligible for discretionary parole on his second-degree robbery conviction and argues that the court might have fashioned a different sentence absent this error. Turner therefore seeks a remand for resentencing. Because the record provides no basis to conclude that the judge's mistaken belief regarding Turner's parole eligibility affected the sentence imposed, we decline to remand this case for resentencing.

*Turner's challenge to the superior court's responses to the jury questions*

This case arose after Turner entered a liquor store and then twice tried to run out of the store carrying bottles of whiskey without paying for them. The first time Turner tried to run out of the store carrying two bottles of whiskey, an employee standing near the door blocked the exit with his body, and Turner "bounced" off the employee and back into the store. Turner retreated into the store, ran to the back of the store, and tried to exit out the back door, but that door was locked. A different employee

---

[1] AS 11.41.510(a)(1) and AS 11.46.150(a), respectively. The jury also found Turner guilty of fourth-degree assault, AS 11.41.230(a)(3), but this count merged into his conviction for robbery.

[2] AS 11.41.510(a).

confronted Turner with bear spray and ordered him to put down the bottles of whiskey, which he did. But as Turner was being escorted towards the front of the store, he grabbed another bottle of whiskey and again tried to run with it out the front door. Turner ran into the employee guarding the front door for a second time, "bouncing" back into the store. This time, the employee got the bottle of whiskey away from Turner, and Turner left the store emptyhanded.

Based on this conduct, Turner was charged with, *inter alia*, first-degree robbery.[3] The jury acquitted Turner of first-degree robbery but convicted him of the lesser included charge of second-degree robbery under AS 11.41.510(a)(1). In relevant part, this statute provides that a person commits second-degree robbery if, in the course of taking property from another, "the person *uses . . . force* upon any person *with intent to . . .* prevent or overcome resistance to the taking of the property or the retention of the property after taking[.]"[4] This language does not specify a mental state applicable to the defendant's use of force. But the language does make it clear that the defendant must use force "with intent to" accomplish a particular result, namely preventing or overcoming resistance to the taking of property.

In his closing argument, defense counsel argued that Turner had not used force against the liquor store employee who guarded the front door and that, instead, the employee had used force against him. The attorney noted that the employee had moved to block the exit while Turner was running towards it, and argued that a person cannot use force without intending to do so. According to the attorney, the employee "had the intention of making bodily contact with [Turner]," while "[Turner's] intention . . . was to get out of the store, not to commit some sort of assault on [the employee]."

---

3    AS 11.41.500(a)(1).

4    AS 11.41.510(a)(1) (emphasis added).

The State, meanwhile, argued that Turner "chose to run at the door with [the employee] standing right there" and "had the option to stop running and not use the force . . . , but he chose not to." Thus, the State argued, Turner intended to use force.

The superior court instructed the jury using the criminal pattern jury instruction for second-degree robbery. The criminal pattern jury instruction spatially separates the requirement that the defendant use force from the requirement that the defendant act with intent to prevent or overcome resistance to the taking of property. Here is how the criminal pattern instruction (and the instruction given to the jury in this case) describes the crime of second-degree robbery:

> To prove that the defendant committed this crime, the state must prove beyond a reasonable doubt each of the following elements:
>
> (1)     the defendant *used or threatened the immediate use of force* upon any person;
>
> (2)     the defendant did so in the course of taking or attempting to take property from the immediate presence and control of another; and
>
> (3)     the defendant *intended to . . .* prevent or overcome resistance to the taking of the property or the retention of the property . . . .[5]

Neither party objected to this instruction at the time it was issued.

But after the case was submitted to the jury, the jury twice asked questions about the culpable mental state for the use-of-force element.

First, the jury requested a definition of the words "use" and "used" and asked, "[I]s intent implied in the 'use' of force?" Defense counsel argued that the court should instruct the jury that a defendant must "intentionally" use force in order to be found guilty, while the prosecutor argued that the court should instruct the jury that a defendant has to "knowingly" use force.

---

5     Emphasis added.

The court ultimately decided to instruct the jury that "the use of force must be intended in the manner described in the 3rd element" of the jury instruction on the elements of second-degree robbery. The third element of the second-degree robbery instruction informed the jury that the State had to prove that "the defendant intended to either prevent or overcome resistance to the taking of the property or the retention of the property or compel any person to deliver the property or engage in other conduct which might aid in the taking of the property." The court reasoned that this response best answered the jury's question because it pointed the jury to the specific intent that Turner had to have when he used force. The court believed that this would foreclose the possibility of the jury finding Turner guilty based on "an accidental bumping" of the employee because the jury would have to find that Turner made contact with the employee with a specific intent.

Both parties agreed to this response. The parties also agreed that the court would instruct the jury that the words "use" and "used" have their common meanings.

The next day, the jury asked the court to provide it with definitions of the "common meaning" of the words "use" and "used." The jury note also asked, "Can an individual 'use' force intentionally, knowingly, recklessly or un[i]ntentionally[?]"

With respect to defining the common meanings of the words "use" and "used," the parties and the court discussed providing a definition from the dictionary but ultimately agreed that the court would decline to provide a further definition.

With respect to the question about the culpable mental state for the use of force, the court decided to provide the jury with the language of the statute because it believed that the requirement that the defendant use force with a specific intent was clearer in the statutory language than in the pattern jury instruction. The court noted that the specific intent language in the statute immediately followed and clearly modified the use-of-force language — requiring that the defendant "use[] or threaten[] the immediate use of force upon any person *with intent to*" prevent or overcome resistance or compel delivery — while the pattern jury instruction separated these

requirements into separate, unconnected elements. Turner objected to this response and requested that the court instruct the jury that a defendant must "intentionally" use force in order to be guilty of robbery. The court rejected this request.

After receiving the court's second answer, the jury acquitted Turner of first-degree robbery but found Turner guilty of second-degree robbery, fourth-degree theft, and fourth-degree assault. (As we noted previously, the fourth-degree assault count merged with the second-degree robbery conviction.)

*Why we reject Turner's challenge to the court's responses to the jury questions*

On appeal, Turner argues that the court erred when it rejected his request to instruct the jury that the mental state applicable to the use-of-force element of robbery is "intentionally."

Under Alaska Criminal Rule 30(b), a trial court must generally "instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict." If the jury asks a legal question while deliberations are underway, the scope of the court's discretion as to how to respond depends on existing jury instructions.[6] If the jury's question concerns a legal issue that the court has already adequately instructed on, the court may decline to provide further clarification.[7] But if the court's previous instructions were incorrect or insufficient, or if it is apparent from the jury's question that it misunderstands the law, the court has a duty to clarify.[8]

---

[6]   *See Des Jardins v. State*, 551 P.2d 181, 190 (Alaska 1976).

[7]   *Id.*

[8]   *Id.*; *see also Moffitt v. State*, 207 P.3d 593, 602-03 (Alaska App. 2009); *Glidden v. State*, 842 P.2d 604, 610-11 (Alaska App. 1992).

To determine if the court's responses to the jury's questions in this case were correct and sufficient, we must first determine the mental state applicable to the use-of-force element in Alaska's robbery statute.

Both Turner and the State agree that the defendant's use of force must be non-accidental — *i.e.*, it must be more than negligent or reckless. But Turner argues that the defendant must use force "intentionally," whereas the State argues that the defendant must only use force "knowingly."

We agree with both parties that there must be *some* mental state applicable to the use-of-force element. This is evident from the statutory text for at least two reasons. First, the word "use" typically implies "action and implementation."[9] Thus, as the United States Supreme Court has concluded, the statutory phrase "use . . . of physical force against the person or property of another" (set out in a former federal statute which is not meaningfully distinguishable from the relevant language in Alaska's robbery statute) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct."[10] Similarly, federal appellate courts construing the offense of robbery under the Hobbs Act have repeatedly held that the defendant's conduct must be knowing.[11]

Second, Alaska's second-degree robbery statute requires that the person use force "with intent to" accomplish a particular objective — either to "prevent or

---

[9] *Bailey v. United States*, 516 U.S. 137, 145 (1995), *superseded by statute*, 18 U.S.C. § 924(c)(1)(A), *as recognized in United States v. O'Brien*, 560 U.S. 218, 232-33 (2010).

[10] *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).

[11] *United States v. Barrett*, 102 F.4th 60, 79 (2nd Cir. 2024) (collecting cases). The Hobbs Act defines "robbery" in 18 U.S.C. § 1951(b)(1) as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."

overcome resistance to the taking [or retention] of the [stolen] property," or to "compel any person to deliver the property or engage in other conduct which might aid in the taking of the property."[12] This language requires more than just proof that the person used force *while* having a particular objective. Rather, the person must use force *with the intent* to accomplish that objective. This makes it clear that the defendant's use of force cannot be accidental, because a person cannot use force accidentally while simultaneously using that same force with the intent to accomplish a particular objective.

Having concluded that there must be *some* mental state applicable to the use-of-force element, the next question is whether the applicable mental state is "intentionally," as Turner contends, or "knowingly," as the State argues. We agree with the State that the applicable mental state is "knowingly." Alaska law divides the elements of an offense into three categories: conduct, circumstances, and result.[13] But Alaska law further provides that "knowingly" is the only mental state that can be applied to conduct,[14] and the use of force is a conduct element.[15] The mental state applicable to the use-of-force element is therefore "knowingly."

Finally, we must determine whether the superior court's responses to the jury's questions were accurate and sufficiently clarified the law. Because "knowingly," not "intentionally," is the mental state applicable to the use-of-force element, the

---

[12]  AS 11.41.510(a)(1)-(2).

[13]  *See* AS 11.81.610(b).

[14]  *See* AS 11.81.900(a); *Neitzel v. State*, 655 P.2d 325, 328-29 (Alaska App. 1982); Commentary to Alaska's Revised Crim. Code, 1978 Senate Journal Supp. No. 47 (June 12, 1978), at 140; *Stoner v. State*, 2016 WL 1394221, at *4-5 (Alaska App. Apr. 6, 2016) (unpublished) (Mannheimer, C.J., concurring).

[15]  *See State v. Getz*, 313 P.3d 708, 715 (Haw. 2013); *People v. Mortenson*, 541 P.3d 639, 642 (Colo. App. 2023) (citing *People v. Derrera*, 667 P.2d 1363, 1368 (Colo. 1983)).

superior court did not err when it rejected Turner's request to instruct the jury that the mental state applicable to the use-of-force element is "intentionally."

We further conclude that the jury instructions, taken as a whole, properly informed the jury of the applicable law.[16] As we have explained, our conclusion that the "use of force" requires proof of something more than negligence or recklessness is derived from a plain reading of the text of the statute itself. Here, in response to the jury's second question, the superior court provided the jury with the actual language of Alaska's robbery statute — language that makes it clear that the use of force cannot be accidental. After receiving this language, the jury did not ask any further questions about the mental state applicable to the use of force, and it returned a verdict shortly thereafter. The jury instructions adequately informed the jury of the applicable law.

This conclusion is further reinforced by the evidence presented at trial. At trial, the State admitted video footage of both collisions, and both store employees testified. The footage and testimony regarding the second collision provided strong evidence that Turner knowingly used force against the employee who guarded the door. When Turner collided with that employee the first time, he began running from a location near the store counter. But when Turner collided with the employee the second time, he began running from a greater distance. Turner was also aware the second time that the employee had stood his ground and absorbed contact moments earlier.

Given the instructions provided to the jury, and the strength of the evidence that Turner's use of force was knowing, there is no reasonable possibility that the jury convicted Turner on the legally incorrect theory that accidental use of force was sufficient to convict.[17] We therefore affirm his conviction.

---

[16] *Kangas v. State*, 463 P.3d 189, 194 (Alaska App. 2020).

[17] *See Moffitt v. State*, 207 P.3d 593, 596-603 (Alaska App. 2009) (reversing a defendant's conviction when there was a "substantial possibility" that the jury convicted on a legally incorrect theory). On appeal, Turner argues that the court's failure to instruct the jury on the culpable mental state for the use-of-force element is structural error under

*Turner's sentencing challenge*

Turner raises one additional claim on appeal. Turner notes that the superior court misunderstood his eligibility for discretionary parole and argues that the court might have imposed a different sentence had it realized that he was not eligible for discretionary parole. Turner therefore seeks a remand for resentencing.

The court's sentencing remarks that Turner challenges came in the last few minutes of an hour-long sentencing hearing. The court began these remarks by telling Turner that it needed "to give [him] some truth in sentencing statements."[18] The court stated, "You must serve at least one-fourth of your sentence before you will be eligible for [discretionary] parole." This was error, in that recently passed legislation that took effect before Turner committed his offense eliminated discretionary parole eligibility for, *inter alia*, second and third felony offenders convicted of a class B felony (including second-degree robbery) and Turner was a third felony offender.[19]

_____

*Jordan v. State*, 420 P.3d 1143, 1152-57 (Alaska 2018). Although the jury instructions did not specifically include the word "knowingly," they did not, taken as a whole, fail to instruct the jury as to the culpable mental state applicable to the use-of-force element. We also note, as have other courts, that statutory terms such as "robbery" and "takes" imply knowing, deliberate action. *See, e.g.*, *United States v. Jackson*, 749 F. Supp. 2d 19, 27 (N.D.N.Y. 2010); *People v. Jones*, 595 N.E.2d 1071, 1075 (Ill. 1992) (charging document that said defendant "took" property sufficiently conveyed that he acted knowingly). Moreover, Turner has only ever argued that his use of force was accidental because he did not know that the employee would block his way; he did not argue that he did not take knowing and deliberate action.

[18] Alaska R. Crim. P. 32.2(c)(2)(A)-(B) (requiring sentencing judges to state approximate minimum amounts of time a defendant will have to serve before becoming eligible for discretionary parole, if applicable).

[19] *See* FSSLA 2019, ch. 4, § 106, which amended AS 33.16.090(a)(1) to add, *inter alia*, subparagraph (D), which states: "a prisoner sentenced to a single sentence within or below a presumptive range set out in AS 12.55.125(c), (d)(2)-(4), (e)(3) and (4), or (i) who has not been allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release is not eligible for discretionary parole." Turner was also sentenced for fourth-degree theft, but the court ran this sentence concurrently to the robbery sentence. Under AS 33.16.090(b)(5)(C), a person sentenced to concurrent sentences may

Turner argues that the court was thus unaware of the full parameters of its sentencing authority and that it might have sentenced him differently if it realized he was ineligible for discretionary parole.[20] But the court's "truth in sentencing" statements came after the court had resolved the parties' disputes regarding the presentence report, made findings as to aggravating and mitigating factors, analyzed the pertinent sentencing factors, and imposed sentence. In other words, the court's view as to Turner's discretionary parole eligibility did not play a role in the court's fashioning of Turner's sentence.

We therefore affirm Turner's sentence.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

not be paroled, as relevant to the circumstances here, until they have reached eligibility on their primary crime, thus pegging eligibility to their primary crime and essentially treating it as a single sentence.

Alaska Statute 33.16.090(a)(1)(D) took effect July 9, 2019, and applied to sentences imposed on or after the effective date of the bill for conduct occurring on or after the effective date. FSSLA 2019, ch. 4, §§ 142(b)(18), 150. Turner committed the robbery on August 1, 2019.

[20] *See Adkins v. State*, 776 P.2d 1058, 1060 n.1 (Alaska App. 1989) (noting that the supreme court in *Jackson v. State*, 616 P.2d 23 (Alaska 1980), "cautioned against calculating the length of a sentence on the assumption that the defendant would in fact be released from prison upon becoming eligible for parole"); *Jones v. State*, 2018 WL 4913802, at *3-6 (Alaska App. Oct. 10, 2018) (unpublished) (remanding when the sentencing court appeared to have declined referral to the three-judge sentencing panel at least in part on a mistaken belief that the defendant would be eligible for discretionary parole); *Avery v. State*, 2009 WL 692089, at *2-3 (Alaska App. Mar. 18, 2009) (unpublished) (remanding when the record was unclear whether the sentencing court had a misunderstanding about parole eligibility that affected the sentence it imposed).